Stiegelmann et al., Exrs., *v.* Ackman et al., Appellants.

Argued January 8, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas Boylan,* with him *Robert M. Taylor,* for appellants.

*Harry M. Berkowitz,* for appellees.

OPINION BY MR. JUSTICE JONES, March 19, 1945:

This is an appeal from a decree directing the defendants to reconvey to the plaintiffs certain real estate which Jacques Stiegelmann, the plaintiffs' testator, had granted and conveyed to Carrie M. Ackman. Stiegelmann instituted the suit after the grantee's death, and the defendants are Mrs. Ackman's heirs at law and their respective spouses. The plaintiff died subsequent to the entry of the decree below and his executors were thereupon substituted of record for him. The plaintiff based his right to a reconveyance of the property upon the allegation that his deed to Mrs. Ackman was delivered without his authority or consent. The question involved is whether the proofs sustained the allegation.

After a trial on the merits, the court below filed an adjudication, holding that the plaintiff had failed to meet his burden. A decree nisi dismissing the bill of complaint was entered accordingly. On petition of the plaintiff, a rehearing was granted at which additional evidence was received. Thereafter, the learned chancellor reversed his original conclusion and held that Stiegelmann had not legally conveyed the property to Mrs. Ackman "because there is no proof of the deed ever having been delivered to the grantee". While this conclusion is contained in what the trial court denominated a finding of fact, the evidence from which it was drawn appears in the discussion contained in the adjudication filed after the rehearing.

The pertinent inquiry, as we have indicated, is whether there is any competent proof to justify a con-

clusion that the deed was not legally delivered to the grantee. Originally, the learned chancellor had found that "Jacques Stiegelmann conveyed the real estate * * * [in controversy] to Carrie M. Ackman for a good and valuable consideration" and that "Said deed of conveyance, dated April 19, 1937, was duly recorded by counsel for plaintiff [Stiegelmann] and at his direction." These findings were logical deductions from the evidence which the trial court accredited and which shows the following:

The plaintiff, a widower about seventy-six years old, persuaded Mrs. Ackman, a distant relative, to act as housekeeper in his home near Cornwells, Bucks County, Pennsylvania. At that time Mrs. Ackman was residing in her home in Roxborough, Philadelphia, some miles distant from Cornwells. Having consented to attend to Stiegelmann's housekeeping and after having made the trip (daily for some time) between Roxborough and Cornwells by automobile for the purpose indicated, Mrs. Ackman moved to the vicinity of Stiegelmann's home and there resided in the house on the property which is the subject matter of this litigation. Extensive repairs and alterations were made to the house immediately prior to Mrs. Ackman's occupancy of it, all of which were paid for by Stiegelmann. Later, with members of her family, she moved into Stiegelmann's home. He paid all of the living expenses, Mrs. Ackman's children performing some work about the place in return for their maintenance.

The evidence as to the drawing of the deed and its recording appeared from the testimony of the plaintiff's witness, Edward H. Buckley. The learned chancellor, in his discussion of the evidence after the rehearing, summarized Buckley's testimony in material part as follows: "the plaintiff [Stiegelmann] directed his then attorney and real estate agent, Edward H. Buckley, Esq., to prepare a deed for the * * * property [now in controversy] with Carrie M. Ackman as grantee. * * * The deed was executed in April, but * * * was never

recorded until the following August when, according to the testimony of Buckley, Mrs. Ackman, accompanied by the plaintiff, visited his office and inquired about her deed. Buckley looked at his client, the plaintiff in this matter, for instructions and interpreted a nod of his head as acquiescence in Mrs. Ackman's demand. The deed was thereupon recorded and subsequently returned to Jacques Stiegelmann."

That the deed to Mrs. Ackman was prepared by Buckley as attorney for and at the direction of Stiegelmann and that the latter voluntarily executed it on April 19, 1937, stand as unexceptionable facts. It is also a matter of admitted record proof that the deed was recorded on August 10, 1937. In explanation of the delay in the recording of the deed, Buckley testified that, of his own volition, he purposely withheld the deed from record in the belief that Stiegelmann might possibly change his mind about the matter. Thus, the unrecorded deed was still in Buckley's office when Stiegelmann and Mrs. Ackman called there on or about August 10, 1937. At that time she asked Buckley in Stiegelmann's presence, "Where is my deed?" Buckley looked at Stiegelmann who "nodded his head" in assent. Whereupon Buckley said, "You can have your deed in about three weeks", that being the period of time which Buckley estimated would be required for the recording, to which he attended forthwith.

Delivery of the deed was, of course, necessary to render it legally operative: *Rynier Estate,* 347 Pa. 471, 474, 32 A. 2d 736; *Cragin's Estate,* 274 Pa. 1, 4, 117 A. 445. It was the opinion of the court below, following the rehearing, that "The only possible interpretation of constructive delivery could be the fact that the deed [after the recording] was mailed [by Buckley] to the common domicile of both of them [Stiegelmann and Mrs. Ackman], but in the name of Jacques Stiegelmann." If delivery of the deed rested upon that circumstance, then, obviously, there was no delivery. Actually, Buckley did not mail the deed to Stiegelmann until more than a

year after Mrs. Ackman's death on April 4, 1938. Throughout the period from the time the deed was executed on April 19, 1937, until Buckley mailed it to Stiegelmann in July of 1939, it was in Buckley's office except for the two or three weeks required for its recording consequent upon Stiegelmann's and Mrs. Ackman's visit to Buckley's office as above stated.

However, delivery may be found, just as the learned chancellor originally found it, from Stiegelmann's nodded assent to Mrs. Ackman's request for the deed in Buckley's office wherewith Buckley then complied, as he indicated he would do, by placing it on record. The circumstances so shown were legally sufficient to constitute a constructive delivery. Delivery is to be inferred from the words and acts of a grantor evidencing an intention on his part to surrender his title to the property (embraced by his conveyance) and to invest his grantee therewith. Such an intent, accompanied by actions or words sufficient to effectuate it, spells delivery: *Rynier Estate,* supra, at p. 475; see also *Dayton v. Newman,* 19 Pa. 194, 199; and *Long v. McHenry,* 45 Pa. Superior Ct. 530, 533, and cases there cited.

Moreover, the deed was in fact recorded. The recording, of itself, raised a presumption of delivery: *Chambley v. Rumbaugh,* 333 Pa. 319, 320, 5 A. 2d 171; *Lewis v. Merryman,* 271 Pa. 255, 258, 114 A. 655. In the *Merryman* case, supra (p. 260), "The strongest evidence of delivery was the fact of recording". In that case this Court said that "the burden of overcoming the presumption resulting * * * [from recording] was on * . * * [the grantors], who, to destroy it, must do so by clear, positive proof that no delivery was intended, and that * * * [the depositary] was not authorized to record the instrument." The mere assertion of a grantor that his deed was not delivered is ordinarily not sufficient to overcome the presumption of delivery arising from recording: *Lewis v. Merryman,* supra; *Clymer v. Groff,* 220 Pa. 580, 583-4, 69 A. 1119; *Kern v. Howell,* 180 Pa.

315, 321, 36 A. 872; *Ingles v. Ingles,* 150 Pa. 397, 400, 24 A. 677; and *Long v. McHenry,* supra.

In order to show that the recording in the instant case was unauthorized, the plaintiff averred that Buckley was to hold the deed in escrow but that "Carrie M. Ackman went to the office of the said Edward H. Buckley and instructed him to record the aforementioned deed" and that "pursuant to her instructions" Buckley did so. In the adjudication first filed, the learned chancellor expressly found that the deed had been recorded at Stiegelmann's direction. That finding was based upon Buckley's testimony, which was ample to support it. In the adjudication filed following the rehearing, the trial court stated that Buckley "testified substantially the same at the second hearing as at the first, but [that] his evidence was contradicted" by two named attorneys "who [had] represented the plaintiff at the original hearing * * *" and had withdrawn as counsel in order to qualify as witnesses for the plaintiff at the rehearing. Because of the contradiction which the testimony of these witnesses injected, the learned chancellor found that "Buckley's testimony is very unsatisfactory" and then suggested (but did not actually find) that, perhaps, Mrs. Ackman had directed that the deed be recorded without any assent from the grantor and contrary to his intent.

The witnesses called by the plaintiff at the rehearing in refutation of Buckley testified that he had told them in August 1939 that Mrs. Ackman had come to his office alone in August 1937 and had then instructed him to record Stiegelmann's deed to her. Plainly, that testimony contradicted Buckley who had testified that Mrs. Ackman was accompanied by Stiegelmann and that the recording was with Stiegelmann's indicated acquiescence. One of the refuting witnesses also testified that Miss Hall, Buckley's secretary, whose testimony corroborated Buckley in material regard, had told him that Mrs. Ackman had come to Buckley's office alone and had instructed him to record the deed.

The credibility and weight of the oral testimony were, of course, for the trier of the facts. It was, therefore, the trial court's prerogative to believe or disbelieve Buckley and Miss Hall, just as it saw fit. But, the learned chancellor went further and treated the testimony, given in refutation of Buckley and Miss Hall, as substantive proof of the facts contained in the contradictory statements. Thus, in addition to finding, after the rehearing, that Buckley's testimony was "very unsatisfactory", the trial court disposed of the question of delivery upon alternative assumptions, one of which was that the deed had been recorded at Mrs. Ackman's instance without Stiegelmann's consent or approval. In so doing, the learned chancellor erred. The contradictory statements were competent for no more than to discredit the testimony of Buckley and Miss Hall. The contradictions were not proof that Mrs. Ackman had directed that the deed be recorded contrary to Stiegelmann's desire and intent: *Harrah v. Montour Railroad Company*, 321 Pa. 526, 527, 184 A. 666; *Zavodnick v. A. Rose & Son*, 297 Pa. 86, 90, 146 A. 455; *Scheer v. Melville*, 279 Pa. 401, 404-405, 123 A. 853; *Commonwealth v. Deitrick*, 221 Pa. 7, 16, 70 A. 275. See, also, Wigmore on Evidence, Vol. 3 (Third Ed.), § 1018, p. 687 et seq.

Full respect for the rule of evidence to which we have just referred is all the more essential where, as in the present instance, a litigant seeks to impeach the credibility of his own witnesses under the guise of correcting mistakes in their testimony. Buckley and Miss Hall were produced by the plaintiff who then sought to discredit them with respect to the one matter of materiality in their testimony. See *Evans v. Penn Mutual Life Insurance Company*, 322 Pa. 547, 558, 186 A. 133, and cases there cited. But, even though the testimony in refutation of Buckley and Miss Hall were disregarded as incompetent in the circumstances, still we could not properly say that they should have been accredited just as the trial court had originally accredited Buckley. In last analysis, their credibility and the weight to be given

their testimony were matters peculiarly for the trial court's appraisal.

Who caused the deed to be recorded and under what circumstances it was recorded were facts crucial to the question of delivery. The plaintiff averred, and had the burden of proving, that the recording was the result of unauthorized directions from Mrs. Ackman. There is no evidence in the case to justify any such finding. Nor was a finding to that effect actually made. Whether Buckley's and Miss Hall's testimony be believed or disbelieved, the result would be the same. If believed, then it justifies the finding originally made by the learned chancellor that the deed was recorded at Stiegelmann's direction; and, if disbelieved, then there is nothing in the case from which any finding concerning the recording can be made. In either event, the plaintiff fails to meet his burden of showing that the recording of the deed was unauthorized. And, the presumed delivery arising from the recording stands unrebutted.

The remaining matters urged by the plaintiffs merit little discussion. The fact that Stiegelmann, after Mrs. Ackman's death, leased the property in question under a lease which he had Buckley prepare for that purpose was ineffectual to impair whatever title Mrs. Ackman had acquired in her lifetime. Stiegelmann's action in such regard was self-serving. Cf. *Lewis v. Merryman,* supra; *Clymer v. Groff,* supra; *Kern v. Howell,* supra; *Ingles v. Ingles,* supra; and *Long v. McHenry,* supra. He knew, when he made the lease, that the legal title to the property was in Mrs. Ackman as a matter of official record. Prior to her death, he had had Buckley prepare a deed of reconveyance which he took to the hospital, where Mrs. Ackman was then confined, for her execution. She was so far *in extremis* at that time that the deed was not submitted for her signature and nothing came of that matter. But, it did confirm, what Stiegelmann's testimony otherwise discloses,—that he knew, when he made the lease, that the title to the property was in Mrs. Ackman as a consequence of his deed to her.

The decree is reversed at the appellees' costs.