William J. BELL and Margaret Bell

v.

Alexander MYKYTIUK.

William J. BELL, Appellant.

No. 12173.

United States Court of Appeals Third Circuit.

Argued June 3, 1957.

Decided Aug. 9, 1957.

See also 135 F.Supp. 167.

Leonard Turner, Philadelphia, Pa., for appellant.

John J. McDevitt, 3d., Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

On July 3, 1954 at Oxford Circle on Roosevelt Boulevard in northeast Philadelphia the car of the plaintiff Bell and the car of the defendant Mykytiuk collided. The plaintiff instituted suit for personal injuries and property damages and the defendant counterclaimed for damages to his car. Jurisdiction is based on diversity and the law of Pennsylvania, of course, governs.

At the trial the plaintiff testified that he was proceeding around the circle in the far right hand lane at a speed of from 18 to 20 miles an hour when his car was struck on the left rear fender by the defendant's car. Bell stated that he had not turned into any other lane or overtaken the defendant's car; that he did not see the defendant's car until it had struck his left rear fender; and that the force of the collision turned his car around heading it in the opposite direc-

tion. The testimony of Mrs. Bell,[1] a passenger in her husband's car, corroborated this description of the collision.

A Park Guard, Capriotti, who witnessed the accident was called by the plaintiff. Capriotti testified that the plaintiff's car was traveling 25 to 30 miles an hour in the middle lane of the Circle when the defendant's car came around the Circle to the plaintiff's car's left and caught the plaintiff's car's left rear fender or bumper and turned the plaintiff's car around. Capriotti stated that on questioning the defendant immediately after the accident the defendant told him that the plaintiff had cut in front of his car.[2] On cross-examination Capriotti was asked whether the plaintiff swerved left in front of the defend-

ant and Capriotti replied, "I wouldn't say that he did." [3] Capriotti was then shown a signed statement which he had given to a representative of the defendant's insurance company on November 11, 1954. The statement described the plaintiff as pulling to the left in front of the defendant's car, and the plaintiff's car as striking the defendant's car. Capriotti said that the statement was his best recollection in November of 1954 as to how the collision occurred.[4]

On redirect examination Capriotti identified his official report made the day of the accident. The report states that the defendant's car hit the left rear fender of the plaintiff's car which was in front because the defendant made too close a left turn.[5] Capriotti admitted

1. The court below on October 18, 1955 dismissed that portion of the complaint attempting to set out a cause of action for Mrs. Margaret Bell and this order was not appealed from.

2. Capriotti was asked how he reacted to the defendant's statement. Capriotti stated that he "thought that he [the defendant] was traveling too close, and I also gave him a summons for traveling too close." On objection the court ordered the testimony as to the summons stricken and directed the jury to disregard it.

3. "Q. Officer, immediately before the contact did Mr. Bell bear toward the left in front, sort of go in front of Mr. Mykytiuk's car? A. I wouldn't say that he did. I'd say that he came into that Circle, he made his right coming into the Circle, and he started to go on around, around the Circle. Now, the other car came into the Circle to his left. I don't believe that he would be visible to Mr. Bell because Mr. Bell didn't have a side mirror on his automobile, and he came into his left and he was going around, started around with him and then he caught his right fender into Mr. Bell's left fender and spun him around like this more or less—because of him going around, the reason why I say he was turning around."

4. A representative of defendant went to Capriotti's home to obtain the statement. The statement provides in pertinent part: "Oxford Circle is able to handle about 6 car widths with traffic all moving in a counter-clockwise motion. Bell (plaintiff) car being #1 and Mykytiuk (defend-

ant) car being #2. Car #1 was coming down Roosevelt Blvd. in a Southwest direction. Car #2 was following directly behind. Both cars going about 25 M.P.H. Roosevelt Blvd. is 6 car widths wide but when it reaches Oxford Circle it narrows to 3 car widths. I saw car #1 enter and #2 follow into Oxford Circle. These cars were in the right lane on the north curb line of Roosevelt Blvd. before they entered Oxford Circle. * * * I saw Car #1 turn to the right to proceed the counterclockwise motion around Oxford Circle. Car #1 pulled to the center lane of traffic in the circle. Car #2 pulled to the inside of Car #1 between the Oxford Circle (center grass plot) and Car #2 (sic). *The rear bumper of Car #1 was about even with the front bumper of Car #2 when Car #1 (plaintiff's car) pulled to the right* (Q.C.C. left) *in front of Car #2. The left rear fender and bumper area of Car #1 struck the right front fender of Car #2.* The impact spun the #1 car around so that it came to rest in front of Car #2, the right rear of Car #1 against the front of Car #2." (Emphasis added.)

The "Q.C.C. left" set out parenthetically in the above quotation indicates a correction made in the statement verified by Capriotti's initialing it.

5. The original report is not in evidence. The report as read to the jury provides in pertinent part, "As I saw the accident both cars came into the Oxford Circle. Car 1 (plaintiff's) was in front and Car 2 (defendant's) right front bumper hit left rear fender of Car 1 and

that he did not have the report to refer to at the time he signed the statement given by him to the representative of the defendant's insurance company in November.

The defendant did not testify and offered no testimony as to how the collision occurred. He introduced evidence to contradict the plaintiff's evidence concerning his injuries and loss of earnings.

The jury found both the plaintiff and the defendant negligent. A verdict was returned for the defendant in the plaintiff's suit and a verdict for the plaintiff was returned on the defendant's counterclaim.

The plaintiff filed a motion for a new trial, arguing, among other points, that the verdict was against the weight of the evidence. The court below denied the motion. D.C.1957, 147 F.Supp. 315. The court concluded that, "This jury could have properly decided that there was no irreconcilable conflict between Capriotti's official report and his subsequent statement to defendant's representative," and that even if Capriotti's report and statement were regarded as inconsistent the jury could have believed other testimony which would place the plaintiff's credibility in doubt and that the jury's verdicts were not necessarily against the weight of the evidence. Id. at page 317.

The issue before us is whether the court below erred in refusing to grant the defendant a new trial. In determining this issue we are limited to considering whether there was substantial evidence to support the jury's verdict. Miller v. United States, 3 Cir., 1943, 137 F.2d 592; Magee v. General Motors Corp., 3 Cir., 1955, 220 F.2d 270.

██ Under Pennsylvania law a new trial is a proper remedy where a verdict rests largely on the testimony of a single witness who is strongly contradicted by other witnesses and discredited by his own prior inconsistent statements. Pearson v. A. W. Funk & Co., Inc., 1934, 315 Pa. 402, 403, 172 A. 674, 675; Cuteri v. West Penn Railways Co., 1931, 305 Pa. 347, 350, 157 A. 686 and Thomas v. Pennsylvania R. Co., 1923, 275 Pa. 579, 583–584, 119 A. 717, 719. Was Capriotti's evidence strongly contradicted by other witnesses and discredited by his own prior inconsistent statements? We cannot agree that it was. The evidence offered by the plaintiff as to how the accident occurred differed from the version given by Capriotti, but the plaintiff's credibility generally was rendered doubtful because of testimony of the defendant's witnesses relating to the plaintiff's injuries, physical condition and loss of work. The defendant's witnesses strongly contradicted the plaintiff's evidence on these points. Were the three statements made by Capriotti, (1) that made immediately following the accident, (2) that made on November 11, 1954,[6] and (3) the statements made during the course of the trial, set out in full in this opinion or in the notes hereto, inconsistent? They must be examined as to their bearing on two factual items: who hit whom, and whether the plaintiff's car swerved to the left into the defendant's lane and therefore into his car. As to the first item, Capriotti's official report states that the defendant's car hit the plaintiff's car; [7] his November 11, 1954 statement describes the plaintiff's car as striking that of the defendant; [8] and finally Capriot-

---

turned him around to face the other way."

The report also contains the following: "Veh. 1 (plaintiff) making left turn. Veh. 2 (defendant) making left turn following too closely."

6. The statement should have been received in evidence at the trial only for the purposes of impeaching Capriotti's credibility as a witness. See Dincher v. Great Atlantic & Pacific Tea Co., 1947, 356 Pa. 151, 51 A.2d 710; Stiegelmann v. Ack-

man, 1945, 351 Pa. 592, 41 A.2d 679, 682; Herr v. Erb, 1948, 163 Pa.Super. 430, 62 A.2d 75, 77; Commonwealth v. Blose, 1947, 160 Pa.Super. 165, 172, 50 A.2d 742, 745; 3 Wigmore, Evidence 687. It was read to the jury, however, and went into the record with objection or limitation. The court was not requested to limit the scope of the statement in its charge.

7. See note 5, supra.

8. See note 4, supra.

ti's testimony at the trial as to this point is none too clear.[9] As to the second item, Capriotti's official report contains nothing specifically relating to it;[10] his November 11, 1954 statement describes the plaintiff's car as pulling to the left in front of the defendant's car;[11] at the trial when Capriotti was asked whether the plaintiff turned to the left in front of the defendant, he replied, "I wouldn't say that he did * * *."[12]

As pointed out by the court below the issue of who hit whom becomes a matter of semantics "If the jury believed that plaintiff [had] cut into defendant's lane. * * *" 147 F.Supp. at page 317. On the issue of whether the plaintiff did cut into the defendant's lane we have Capriotti's clear statement of November 11, 1954 that he did, and Capriotti's rather ambiguous response when he testified on this point in open court. Capriotti's official report throws little light on how the accident occurred. We will not interpret ambiguity as contradiction where the issue is whether the trial court erred in refusing to grant a new trial. Under the circumstances presented by the case at bar, even assuming that some apparent inconsistency exists between Capriotti's written statements and his oral testimony, it is the law of Pennsylvania that it is the duty of the jury to resolve such inconsistency.[13] See Smith v. Flannery, 1956, 383 Pa. 526, 530–531, 119 A.2d 224, 226; Ingram v. City of Pittsburgh, 1944, 350 Pa. 344, 349, 39 A.2d 49, 50–51; Haverkamp v. Sussman, 1935, 317 Pa. 187, 189, 176 A. 206, 207; Danko v. Pittsburgh Railway Co., 1911, 230 Pa. 295, 298–299, 79 A. 511, 512.

We cannot conclude that the court below erred in denying the plaintiff's motion for a new trial.

The judgment will be affirmed.

---

9. At one point Capriotti testified that "the defendant's right fender caught Mr. Bell's left rear fender. * * *" Trial Transcript p. 58. Subsequently, the court asked, "Q. Can you tell me, Mr. Capriotti, which part of Mr. Bell's car came into contact with which part of the other car, or which parts of the two cars came into contact?" "A. The left rear fender and side of Mr. Bell's car—first it was the left rear fender and then that hit the right fender of the other car, and then as Mr. Bell's car turned around this car mashed into the side a little bit. I have it on my report." Trial Transcript p. 71.

10. See note 5, supra.

11. See note 4, supra.

12. See note 3, supra.

13. Pertinent to this point, the court stated in its charge, "These differences in testimony, the inconsistencies, it is your duty to reconcile if you can."