Patricia JENKINS, Administratrix of the Estate of Dudley A. Jenkins, Deceased,

v.

Leonard NICHOLSON and Sidney U. Wenger.

Christina QUANDT, Administratrix of the Estate of Isabel M. Jenkins, also known as Isabelle M. Jenkins, Deceased,

v.

Leonard NICHOLSON and Sidney U. Wenger.

Civ. A. Nos. 20430, 22110.

United States District Court
E. D. Pennsylvania.

May 28, 1958.

Francis X. Hope, Jr., Philadelphia, Pa., for plaintiff Jenkins.

H. Durston Saylor, II, Philadelphia, Pa., for plaintiff Quandt.

David Kanner, Philadelphia, Pa., for defendant Nicholson.

Lynn L. Detweiler, Philadelphia, Pa., for defendant Wenger.

VAN DUSEN, District Judge.

These cases come before the court on post-trial motions filed in these actions, which arose out of collisions between three automobiles. Both defendants struck a car being driven by Dudley A. Jenkins in which Isabel M. Jenkins (his wife) was a passenger. The plaintiffs are the administratrices of the Estates of Dudley A. Jenkins and Isabel M. Jenkins, both of whom died as a result of injuries received in said collisions.

The accident occurred on East River Drive in Fairmount Park, Philadelphia. The deceased husband was driving south on the Drive when his car collided head-on with a car operated by defendant Nicholson, which was proceeding north on the wrong side of the road. The Jenkins car was also struck in the rear by a car being driven by defendant Wenger, which was proceeding southwardly behind the Jenkins car.

The jury returned a verdict in favor of defendant Wenger and against defendant Nicholson after a trial limited to the issue of liability only.[1]

Both plaintiffs and defendant Nicholson have filed motions for a new trial, alleging that the verdicts were against the law and the evidence and assigning certain alleged errors committed by the trial judge.

## I. Contention that verdict for defendant Wenger is against the credible weight of the evidence.

Defendant Wenger and **Dr.** Morris Wenger (his father), a passenger in his car, both testified that the Wenger vehicle could not avoid hitting the Jenkins car because the impact of the Nicholson-Jenkins collision caused the Jenkins car to be pushed backward into

1. Special questions on the issue of liability were submitted to the jury and are set forth below with the jury's answers thereto:

"Patricia Jenkins, Administratrix of the Estate of Dudley A. Jenkins, Deceased, v. Leonard Nicholson and Sidney U. Wenger—Civil Action No. 20,430

"1. Was the defendant, Leonard Nicholson, negligent and was such negligence a substantial factor in causing the injuries and death of the decedent, Dudley A. Jenkins?
 "Yes or No Yes
"2. Was the defendant, Sidney U. Wenger, negligent and was such negligence a substantial factor in causing the injuries and death of the decedent, Dudley A. Jenkins?
 "Yes or No . No

"3. Was the decedent, Dudley A. Jenkins, negligent and did such negligence contribute to his injuries and death?
 "Yes or No No
"Christina Quandt, Administratrix of the Estate of Isabel M. Jenkins, also known as Isabelle M. Jenkins, Deceased, v. Leonard Nicholson and Sidney U. Wenger—Civil Action No. 22,110

"1. Was the defendant, Leonard Nicholson, negligent and was such negligence a substantial factor in causing the death of the decedent, Isabel M. Jenkins, also known as Isabelle M. Jenkins?
 "Yes or No Yes
"2. Was the defendant, Sidney U. Wenger, negligent and was such negligence a substantial factor in causing the death of the decedent, Isabel M. Jenkins, also known as Isabelle M. Jenkins?
 "Yes or No No"

the Wenger car. This reverse action of the Jenkins automobile prevented defendant Wenger from either stopping before he came upon the vehicle or from driving his car into the extreme right, southbound lane.[2]

Defendant Nicholson did not remember which collision took place first in point of time, but stated that he had slowed down to almost a complete stop at the time his car hit the Jenkins car and that it was the Jenkins-Wenger collision which was the cause of the great damage. Detective J. I. Orr, of the Fairmount Park force, stated that, in his opinion, the Nicholson vehicle had been going 50–51 miles an hour before its brakes were applied and that the vehicle was going very slowly at the time of collision. His opinion was based on the skidmarks made by the Nicholson vehicle. It was also his opinion that the Jenkins car did not move after the Nicholson-Jenkins collision. This opinion was based on the location of debris (including fender dirt) directly beneath the Jenkins car, the absence of tire marks through that debris, and the absence of skidmarks directly beneath that car. The jury was not bound to accept Detective Orr's opinion. His "expert" knowledge was shown to be limited on the question of braking distances by cross-examination.[3] In addition, the

jury could have believed that it was the second collision which caused the debris to fall, that this occurred after the Jenkins car had been pushed back, and that defendant Wenger was not negligent.[4]

Plaintiffs and defendant Nicholson contend that some of defendant Wenger's testimony differed from that given in a previous proceeding. The jury could have decided that there was no irreconcilable conflict between such testimony because of the nature of the alleged inconsistencies. Even if there is some apparent inconsistency, it is the duty of the jury to resolve same. Bell v. Mykytiuk, 3 Cir., 1957, 246 F.2d 938, 941. See Smith v. Flannery, 1956, 383 Pa. 526, 530–531, 119 A.2d 224; Ingram v. City of Pittsburgh, 1944, 350 Pa. 344, 349, 39 A.2d 49.

Plaintiffs and defendant Nicholson contend that under Pennsylvania law, when a verdict rests largely upon the testimony of a single witness which is strongly contradicted by that of other witnesses and discredited by his own prior inconsistent statements, the proper remedy is a new trial. However, this rule can only be applied when all the above elements are present. See Bell v. Mykytiuk, D.C.E.D.Pa.1957, 147 F.Supp. 315. The rule is not applicable in this

---

2. Plaintiffs emphasize the following part of Dr. Morris Wenger's testimony:
 "Q. And what happened to it (Jenkins' car) when it was struck? A. Well, it was demolished.
 "Q. Well, did it stand still or move? A. It was standing still." (N. T. 151). However, both before and after these statements, he testified that the Jenkins car was pushed into defendant Wenger's vehicle (N. T. 149, 150, 153). There was no cross-examination of this witness.

3. This lack of his expert knowledge as to speed and braking distances is shown on pp. 73–77 of the notes of testimony.

4. See Ebersole v. Beistline, 1951, 368 Pa. 12, 82 A.2d 11. The presence of fender dirt and other debris is not decisive nor conclusive evidence as to the place of a collision where other evidence shows its position elsewhere at the time of the accident. Kozenchak v. Gardner, 1948, 163 Pa.Super. 328, 61 A.2d 375. Cf. Satovich

v. Lee, 1955, 5 Pa.Dist. & Co.R.2d 289, affirmed 1956, 385 Pa. 133, 122 A.2d 212, at page 214, where the court said:
 "Nor can the presence of the larger portion of the debris a little to the east of the center line of the highway be regarded as significant, in view of the nearness of both cars to the center line. Over exactly how many inches of the highway or in what directions fragments of glass from a broken headlight would be scattered by a violent blow, or at what instant water or alcohol would begin to drip from a damaged radiator, are matters of pure speculation."
In Spiegel v. Ferraro, D.C.E.D.Pa.1957, 151 F.Supp. 281, Chief Judge Kirkpatrick recognized that the presence of fender dirt and glass was not conclusive proof of the side of the road on which the accident occurred. Because of facts far different from those present in this case, a new trial was granted in the Spiegel case, supra.

**170**

case [5] and the credibility of the witnesses was for the jury. See Skovran v. Pritz, 1956, 386 Pa. 425, 432, 126 A.2d 456; Mack v. Reading Co., 1954, 377 Pa. 135, 142, 103 A.2d 749, 41 A.L.R.2d 927; Decker v. Kulesza, 1952, 369 Pa. 259, 264, 85 A.2d 413. The findings of the jury were not contrary to the law or the evidence.

## II. Alleged Trial Errors.

### A. Defendant Nicholson's motion for new trial in Civil Action No. 22,110.

 Defendant Nicholson complains that a portion of the closing speech of counsel for defendant Wenger to the jury was prejudicial [6] and that the court erred in refusing to allow him to "answer" this argument by referring to the possibility that someone else other than defendant Wenger would pay the amount of the verdict, if a verdict was rendered against him.[7]

It is improper for plaintiffs' counsel to try to appeal to the sympathies of the jurors by showing, directly or indirectly, that the defendant is insured. Kaplan v. Loev, 1937, 327 Pa. 465, 194 A. 653, certiorari denied 1938, 302 U.S. 766, 58 S.Ct. 477, 82 L.Ed. 595. It is also improper for the attorney for a defendant to appeal to sympathy or prejudice by attempting to indicate that the defendant will be financially embarrassed if a verdict against him is returned. Even if the remarks of Wenger's counsel had been improper (which the trial judge does not find), opposing counsel would be limited to a correction of any such impropriety and could not himself engage in any improper remarks appealing to sympathy or prejudice. Chicago & Northwestern Ry. Co. v. Kelly, 8 Cir., 1936, 84 F.2d 569.

The remarks of counsel for defendant Wenger are not encompassed by the above examples of impropriety. They were made by the *insured* party to persuade the jury that liability was the only issue and that a verdict should not be entered against him if he was not at fault. This request that the jury decide the case on the merits alone was not an appeal to the jury's sympathy.

Since the argument was proper, the trial judge was correct in refusing to permit the matter to be argued further. In addition, the charge explained the matters the jury should consider regarding the liability of defendant Wenger, including the following (plaintiff Quandt's Point for Charge No. 12):

" 'If the effects of Defendant Wenger's negligent conduct actively and continuously operated to bring about harm to decedent, the fact that the active and substantially simultaneous operation of the effects of Defendant Nicholson's tortious act is also a substantial factor in bringing about the harm does not protect Defendant Wenger from liability.' " (N. T. 207)

### B. Plaintiff's motion for new trial in Civil Action No. 22,110.

 The administratrix of the estate of Isabel M. Jenkins now assigns as error the interruption by the trial judge of the closing speech of her counsel after he stated:

"Mr. Saylor: * * * And just as long as the act of Dr. Wenger, over there, is a substantial factor in bringing about the ultimate consequences, he is liable, even though

5. The testimony of defendant Wenger was corroborated by his father and was not strongly contradicted by the testimony of Detective Orr, as explained above.

6. The portion of the summation of defendant Wenger's counsel, which is charged as being prejudicial, is the following:
"Now, I observe that counsel here, although they both wound up with a peroration asking you to find a verdict against both Defendants, really devoted

their entire arguments to proving that Dr. Wenger caused this accident and caused these deaths. And that, to me, was done in desperation for the reason that I told you: They have the problem of collecting a verdict afterwards. But if he did not cause this, he should not be required to pay a red cent here."

7. Defendant Wenger was insured; defendant Nicholson was not covered by insurance.

Nicholson might be ninety per cent at fault and Dr. Wenger ten per cent at fault."[8] (N. T. 168)

Counsel, when using percentages to the jury, might well have confused them into believing that there is a percentage negligence doctrine recognized by the Pennsylvania law involved in this case. This incident took place on the third day of the second week of the January 1958 civil jury trial period and the hearing judge knew that at least some members of the jury had probably heard charges explaining that in Federal Employers' Liability Act or Jones Act cases [9] the defendant is liable if the negligence contributes in any part or degree to the injuries. Regardless of degrees of fault, it is only if a defendant's negligence is a substantial factor in causing an injury that he is liable under the Pennsylvania doctrine of proximate cause.

The trial judge, in his charge on the question of proximate cause, which was what counsel states he was trying to argue to the jury when he was interrupted, used one of plaintiffs' points for charge.[10] Also, counsel made no objections to the portion of the charge covering proximate cause. See F.R.Civ.P. 51, 28 U.S.C.

**C. Plaintiff's motion for new trial in Civil Action No. 20,430.**

The trial judge also read defendant Wenger's Point for Charge No. 1, as follows at N. T. 203–4:

" 'In weighing the testimony of Dr. Wenger and his father that the Jenkins car was pushed north into the front of the Wenger car against Detective Orr's opinion that the Jenkins car did not move after the first collision, you will bear in mind that opinion evidence is generally considered of a low grade, and not entitled to much weight against positive testimony of actual facts.' "

and continued:

"Well, you remember that Detective Orr was not there, but he said

---

8. The following discourse took place between the court and counsel immediately following this statement:

"The Court: Now, I think you better keep off the law, Mr. Saylor, because that is not my understanding of the law, and you just ask for interruptions when you go into it.

"Mr. Saylor: I beg your pardon, sir. I certainly did not intentionally misstate it.

"The Court: You have an opportunity to present me with Points for Charge, and you can read any of those that I have affirmed to the Jury, or said I will cover, but that last statement of yours I think can only be confusing to them.

"Mr. Saylor: I offer my apology to the Court, sir.

"The Court: That is all right. I just want to warn you that I think you better stick to the facts.

"Mr. Saylor: It goes without saying, ladies and gentlemen of the Jury—excuse me, I will withdraw that. I think I was proceeding to say something I should not." (N. T. 168–9).

It is noted that counsel apparently had no objection to the interruption at the time it occurred.

9. 45 U.S.C.A. § 51 et seq. and 46 U.S.C.A. § 688. See Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Ferguson v. Moore-McCormack Lines, 1957, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511.

10. See plaintiff's Point for Charge No. 12, quoted above under II–A. The trial judge also stated in the charge (see N. T. 199–200):

"Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two wrong-doers are contributing causes, and both proximate factors in the happening of the accident, and impose liability on both of the negligent parties. Now, that is the Plaintiffs' argument, that they were both negligent. * * * * * *

"Now, I want to make it clear to you that if you find that these two or more forces of each of these two Defendants' cars were actively operating because of the negligence of the two drivers; namely, Nicholson and Wenger, and each negligent force was itself sufficient to bring about the harm, the negligence of each Defendant may be found by the Jury to be a substantial factor in causing the harm."

the Jenkins car never moved; whereas, it is my memory of Dr. Wenger's testimony, and also of the testimony of his father, that the car did move back into Jenkins' car."

This charge was proper under the applicable Pennsylvania law on the subject of opinion evidence. In Ray, to Use of Miller v. City of Philadelphia, 1942, 344 Pa. 439, at pages 441, 442, 25 A.2d 145, at page 146, the court stated:

"An opinion is only that: it creates no fact. It is what someone things about something, and the thought may be precisely accurate or totally inaccurate, and yet represent the absolutely honest conviction of the person who expresses it. Because of this, opinion evidence is generally considered of a low grade, and not entitled to much weight against positive testimony of actual facts. There is a great difference between factual and opinion testimony. In the one the witness testifies to the fact and certifies that what he says of it is true. In the other, he only testifies to his opinion that such a thing is true, and certifies only to his integrity of belief. He says he believes his opinion to be correct, but he does not warrant it to be true, and does not pretend that he cannot be mistaken. The world is mad with opinions upon every imaginable subject, but fortunately we only have to take those we approve. And so it is with juries; they may reject in toto the opinion of any witness they disbelieve, and this whether that opinion is contradicted or not."

The Pennsylvania courts have upheld this rule regarding opinion evidence in many cases. E. g., Gaita v. Pamula, 1956, 385 Pa. 171, 174, 175, 122 A.2d 63; Obici v. Third National Bank & Trust Co., 1955, 381 Pa. 184, 188, 112

A.2d 94; Avins v. Commonwealth, 1954, 379 Pa. 202, 206, 108 A.2d 788; Commonwealth v. Heller, 1952, 369 Pa. 457, 462, 87 A.2d 287; In re Peterman's Will, 1951, 367 Pa. 302, 304–305, 80 A.2d 792. See, also, Giffin v. Ensign, 3 Cir., 1956, 234 F.2d 307, 314; [11] McCormick Transportation Co. v. Philadelphia Transp. Co., 1947, 161 Pa.Super. 533, 538–539, 55 A.2d 771; City of Philadelphia v. United States, D.C.E.D.Pa.1943, 53 F.Supp. 492, 495, and cases there cited.

For the foregoing reasons, the motions for a new trial on the basis of alleged errors committed by the trial judge during the charge will be denied.

11. As pointed out in this case, the Pennsylvania courts have taken the view that it is for the jury, rather than any alleged expert, to infer the circumstances surrounding the accident from the location of debris and the position of the cars. See Della Porta v. Pennsylvania R. Co., 1952, 370 Pa. 593, 599, 88 A.2d 911, and cases there cited.