**Schafer v. Kacsur**

C.P. of Lehigh County, no. 2001-C-3441.

*Ronald R. Pellish,* for plaintiffs.
*Dennis J. Morello,* for defendants.

JOHNSON, *J.,* October 29, 2004—

## BACKGROUND

Before the court for disposition is plaintiffs' motion for post-trial relief requesting a new trial. This motion was timely filed on June 18, 2004, after a 12-person jury returned a verdict on June 8, 2004, in favor of defendants. On July 9, 2004, this court issued an order requiring plaintiffs' brief to be filed by August 4, 2004, and defendants' brief in response to be filed by August 18, 2004. Plaintiffs' brief was not filed until August 24, 2004, 20 days after the deadline. Defendants' brief was filed timely and actually before plaintiffs' brief on August 17, 2004.

## DISCUSSION

Notwithstanding the untimeliness of plaintiffs' brief in support of their post-trial motions, plaintiffs' motion

has been entertained, argument was held and this decision follows.

### 1. *Defense Expert Report Filed After Discovery Deadline*

Plaintiffs first argue that "[t]he learned judge erred in allowing the defendant to present, at trial, the deposition testimony of Dr. Michael Brooks M.D., which deposition was taken on April 19, 2004." Although plaintiffs' post-trial motions fail to describe *how* the court erred in this decision, it appears that this motion is a resurrection of the motion in limine brought by plaintiffs prior to the start of the trial. Said motion in limine argued that the court should grant a new trial because the discovery deadline expired several months prior to plaintiffs' counsel's receipt of the expert report of Dr. Brooks; that he first received Dr. Brooks' report on March 16, 2004; and that the discovery deadline had been September of the previous year.

At the time plaintiffs' counsel received the expert report of Dr. Brooks on March 16, 2004, trial was scheduled for April 26, 2004. Therefore he received the expert report approximately 40 days prior to trial. Plaintiffs' counsel indicated that, in order to rebut that report, he would need to get another doctor of a similar discipline since Dr. Brooks expresses an opinion upon a review of the x-rays. Plaintiffs argue that, therefore, they are prejudiced by the lateness of the expert report from Dr. Brooks. However, while the court appreciates plaintiffs' argument that court-imposed deadlines must be obeyed, a new trial will not be granted on the basis of plaintiffs' first argu-

ment. Also, in prosecuting their case, plaintiffs decided what type of expert they needed. Although a plaintiff *may* offer rebuttal to a defense expert, these plaintiffs neither attempted to do so at trial nor did they request a continuance of the trial in order to do so.

On April 15, 2003, the court entered a discovery order requiring defendants' expert reports to be filed by September 19, 2003. No defense expert reports were filed by that date. Arbitration was then held on January 24, 2004. Prior to the arbitration, the plaintiffs had neither produced proof of their tort selection at the time of the subject accident, nor produced documentation of any claims for future loss of earnings and earnings capacity, notwithstanding the discovery requests of defendants. However, at arbitration, the plaintiffs made a claim that this injury caused the plaintiff to seek new employment and then, on January 27, 2004, the plaintiffs provided defendants with proof of full tort eligibility to defendants. Defendants argue that these two factors caused the defendants to investigate the cause of plaintiffs' alleged injuries as, up until this time, the documentation presented by the plaintiffs to the defendants showed neither a breach of the limited tort threshold nor eligibility for noneconomic damages.

Defendants argue that, as a result of these two factors, defendants then obtained a report and opinion from Dr. Brooks, dated March 13, 2004, and forwarded a copy of it to plaintiffs' counsel on March 15, 2004. Defense counsel received Dr. Brooks' report on March 16, 2004. On April 7, 2004, the defendants filed a pretrial memorandum identifying Dr. Brooks as a damages witness. Also

on April 7, 2004, the deposition of plaintiffs' expert, Brian K. Shablin M.D. was conducted.

It is key that plaintiffs received the report and opinion of Dr. Brooks prior to deposing their own expert. Specifically, plaintiffs had defendants' expert report in their hands 22 days prior to deposing their own expert. Defense counsel had the opportunity, over 22 days, to review Dr. Brooks' report with his own expert. Moreover, on April 19, 2004, the videotaped trial deposition of defendants' expert, Dr. Brooks, was conducted and was attended by plaintiffs' counsel, who cross-examined Dr. Brooks at that time after having Dr. Brooks' report for 34 days. Trial was scheduled for April 26, 2004, but was continued to June 7, 2004, due to the granting of defendants' motion to compel the plaintiff, Ray Schafer, to submit to an independent medical examination.

On June 3, 2004, four days before the trial attachment date of June 7, 2004, plaintiffs filed a motion in limine to preclude the defendants' expert testimony on the basis that defendants failed to submit an expert report within the discovery deadline set by the court. Thereafter on June 7, 2004, a conference was held at which said motion in limine was argued. The court denied said motion in limine, placing its reasons therefore on the record. (N.T., June 7, 2004, pp. 9-10.) Trial ensued.

In determining whether to allow an expert for whom a report was not submitted by the discovery deadline to testify, settled law requires that the court balance liberal allowance of a party to present its case against prejudice to the other party in failing to comply with the discovery deadline. *Williams v. SEPTA,* 741 A.2d 848 (Pa. Commw.

1999) (opining that the court must balance the facts of each case to determine prejudice to each party, with preclusion of testimony only to be applied where absolutely necessary); see also, *Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986) (holding that despite noncompliance with the discovery rule, a witness should be permitted to testify where the other party was not prejudiced because it had knowledge of the substance of the challenged testimony); *Green Construction Co. v. PennDOT,* 164 Pa. Commw. 566, 584-86, 643 A.2d 1129, 1138-39 (1994), *appeal denied,* 543 Pa. 718, 672 A.2d 311 (1996) (affirming trial court's denial of party's objection to testimony of expert witness identified five days before trial where there was no bad faith or misrepresentation of the expert expected to testify); *Kemp v. Qualls,* 326 Pa. Super. 319, 473 A.2d 1369 (1984) (holding that no prejudice existed to preclude testimony where a party had 13 days before trial within which to investigate an expert's background).

The deciding factor in this issue is the fact that plaintiffs' counsel had the expert report of Dr. Brooks in his hands 22 days before deposing his own expert. Due to this fact, plaintiffs were not prejudiced by the submission of the defendants' expert report after the discovery deadline. Plaintiffs had adequate time to digest the report of defendants' expert and have their own expert review it and rebut it in his deposition testimony. Moreover, the Superior Court has approved the arguably "late" submission of expert reports as late as 13 days before trial. Here, Dr. Brooks' expert report was received by plaintiffs 40 days before the initial trial date and 51 days before the ultimate trial date.

For these reasons, plaintiffs will not be granted a new trial on the basis of their first post-trial motion argument.

## 2. *Defense Expert's Opinions and Findings*

Plaintiffs' second argument is that "[t]he learned judge erred in overruling the objections of counsel for the plaintiff to the questions asked of Dr. Michael Brooks M.D., concerning his opinion about his findings and [their] relationship to the accident of December 29, 1999, and the existence of trauma evidence on MRI films reviewed by Dr. Michael Brooks M.D."

This argument was neither included within plaintiffs' motion in limine submitted prior to trial, nor raised in any of the objections by plaintiffs in the trial. A careful review of the record reveals the following objections and rulings related to defendants' expert testimony:

(1) Objection to the presentation of Dr. Brooks' testimony for trial because the defendants submitted the expert report late, "and all other reasons that [plaintiffs' counsel] gave in his motion in limine . . . ." Plaintiffs wanted to ensure it was noted that this objection was made at the time of the deposition of Dr. Brooks. (N.T., June 8, 2004, p. 29.) After due consideration, the court denied the motion in limine, as described above.

(2) Objection to the admission of the curriculum vitae of Dr. Brooks. (N.T., June 8, 2004, p. 39.) The court sustained the objection.

(3) Objection to Dr. Brooks' qualifications to render an opinion, based solely on the review of an MRI and x-rays, as to whether their findings are associated with any

traumatic event, and in particular, this accident. (N.T., June 8, 2004, p. 54.) The court overruled the objection, indicating that this goes to the testimony's weight and is, therefore, a question for the jury.

(4) Objection based on hearsay. (N.T., June 8, 2004, pp. 67-69.) Plaintiffs withdrew this objection.

(5) Objection to the admission of Dr. Brooks' report to which he testified. (N.T., June 8, 2004, p. 74.) The court sustained the objection.

The court noted plaintiffs' first objection for the record due to plaintiffs' desire to make a record that the objection had been made at the deposition, although it merely was a restatement of plaintiffs' motion in limine which the court had, prior to the trial objection, denied after argument.

Since plaintiffs' first objection had been addressed in the motion in limine, plaintiffs' third trial objection was really the only trial objection which the court overruled. We now address plaintiffs' third trial objection. Defendants' expert is a neuroradiologist. It is within the purview of his practice to read MRI films and draw conclusions from them. Defense argued, and we agree, that a neuroradiologist would typically *not* examine a patient, but would generally render an opinion based upon a review of the MRI and/or x-ray films alone. The issue of whether or not Dr. Brooks took a history from the plaintiff/patient or examined the plaintiff/patient goes to the weight of his testimony. In overruling the objection, the court indicated to plaintiffs' counsel that he was free to argue to the jury that they should believe his expert instead of the defense expert because the defense expert

did not take a history or examine the plaintiff/patient and plaintiffs' expert did both.

The issues raised in plaintiffs' second argument go to the weight of the evidence rather than the qualification of the expert to testify. (N.T., June 8, 2004, pp. 54-56.) Therefore, a new trial will not be granted on the basis of plaintiffs' second argument.

### 3. & 4. *Weight of the Evidence and Support of the Evidence*

Plaintiffs' third argument in support of a new trial is that "[t]he verdict of the jury was unsupported by the evidence presented in this case. The verdict of the jury finding that the harm suffered by the plaintiffs was not caused by the negligence of the defendant was unsupported by the evidence." Plaintiffs' fourth argument is that "[t]he verdict of the jury finding that the negligence of the defendant was not the cause of any harm to the plaintiff was against the weight of the evidence." Plaintiffs' third and fourth arguments will be taken for consideration together.

Plaintiffs base these arguments on the case of *Andrews v. Jackson,* 800 A.2d 959 (Pa. Super. 2002). There, the Superior Court held that, where there is no dispute that the defendant is negligent and both parties' medical experts agree that the accident caused injuries to the plaintiff, the jury must find the defendant's negligence was a substantial factor in bringing about at least some of the plaintiff's injuries. Although there is no dispute that the defendants were negligent, in the instant case, the parties' medical experts disagree about whether the acci-

dent caused injuries to the plaintiffs, which distinguishes the within case from *Andrews. Id.*

Plaintiffs suggest that the verdict here was so disproportionate to the evidence as to defy common sense and logic. We disagree. In their brief in support of their posttrial motions, plaintiffs list the medical evidence they produced at trial as (1) plaintiff's testimony regarding the injuries he sustained and the medical care he received as a result of the motor vehicle accident; (2) the testimony of Dr. Brian K. Shablin regarding his examination, treatment, diagnosis and prognosis of the injuries sustained by plaintiff, the administration of medication, recommended physical therapy, recommended chiropractic treatment and physiatric consultation with Dr. Scott Naftulin; and (3) the records of Dr. Naftulin. The plaintiffs then indicate that the *only* evidence presented by the defendants was the deposition testimony of Dr. Brooks. This comparison by plaintiffs suggests that plaintiffs presented something more than only deposition testimony at trial, when, in reality, plaintiffs also presented only one deposition, that of Dr. Brian K. Shablin M.D. The records and other opinions listed by plaintiffs in their brief were testified to by Dr. Shablin and, contrary to plaintiffs' inference, were not independently presented and are not exhibits in the case.

There was sufficient testimony presented at trial in this case to find in favor of the defendants. It is well-settled that the jury must consider the credibility of the witnesses, both through what they say and how they say it. *Stiegelmann v. Ackman,* 351 Pa. 592, 598, 41 A.2d 679, 682 (1945); *Kelly v. Prudential Insurance Company of America,* 334 Pa. 143, 148, 6 A.2d 155, 157 (1939);

*Majczyk v. Oesch,* 789 A.2d 717, 720 (Pa. Super. 2001). If they chose to believe the testimony of Dr. Brooks, his testimony would support their verdict for defendants. It may have been significant to the jury that plaintiffs' expert testimony was presented by way of counsel reading the deposition into the record with an associate attorney reading Dr. Shablin's portion from the witness stand, whereas, the defense expert was presented by way of videotaped deposition.

In the within case, the defense expert testified that the medical condition of the plaintiff did not have a specific association with the traumatic event of February 29, 1999. (N.T., June 8, 2004, pp. 58-61.) The plaintiffs' expert admitted that he did not know the cause of some of the plaintiff's medical conditions. (N.T. June 7, 2002, pp. 159, 180-81, 182-83, 191.) Where the experts concede that the injury may have or could have been caused by the accident, the jury is justified in finding that the accident did not cause the injury. *Majczyk,* 789 A.2d at 721. In point of fact, the jury can determine that, although there was an injury, it is not compensable. *Id.* Therefore, a new trial will not be granted on the basis of plaintiffs' third and fourth arguments.

## CONCLUSION

For all of the above reasons, plaintiffs' motion for post-trial relief requesting a new trial is hereby denied.

## ORDER

And now, October 29, 2004, upon consideration of plaintiffs' motion for post-trial relief requesting a new

trial and after argument, it is ordered that said motion is denied, for the reasons set forth in the accompanying opinion.