Arthur Wachtel, J.
This is an action to recover damages for personal injuries sustained by the infant plaintiff against *361 the retailer based on negligence and breach of warranty. The cause of action based on negligence was dismissed on the trial and the court limited plaintiff’s case to breach of implied warranty of merchantability.
Plaintiff, Blanche Gray, purchased from the defendant a can of whole kernel corn bearing the defendant’s brand name. The can of corn was used on the evening of the day it was purchased. During the meal the infant plaintiff picked up a portion of corn from his plate with his spoon, saw a worm imbedded therein and immediately thereafter became ill and nauseous. He testified he felt stomach pains thereafter for approximately a week.
The jury returned a verdict in favor of the infant plaintiff in the sum of $100, and defendant now moves to set aside the verdict.
Defendant argues that plaintiff did not eat, bite or take into his mouth the worm or any part of it. At no time did it come in contact with his person.
This case now presents the question whether damages for fright and psychic trauma may be allowed in foreign substance food cases based on breach of implied warranty, as they are now allowed in cases of negligence, since the historic overthrow of the rule of Mitchell v. Rochester Ry. Co. (151 N. Y. 107) in Battalla v. State of New York (10 N Y 2d 237). The courts have understandably been concerned with the danger to the public involved. They have also understandably struggled against the technical barriers raised by the defendants in these cases to thwart consumers misled by their asserted proclamations of faith. They have raised the plea of privity to avoid the consequences of their fault, for a time successful, but now no longer so. (See Starke, J., in Parish v. Great Atlantic & Pacific Tea Co., 13 Misc 2d 33.) And their reliance on the law of contracts to avoid liability has met its deserved demise in the decision of the Court of Appeals in Greco v. Kresge Co. (277 N. Y. 26). There the issue was raised whether the breach of an implied warranty was a1 ‘ wrongful act, neglect or default ’ ’ within the meaning of section 130 of the Decedent Estate Law. The answer depended upon “ a solution of the question as to whether breach of the implied warranty, in a case such as this, where personal injury to the person to whom the Avarranty is made results from the breach, is tortious in nature and effect and is due to the wrongful act or neglect or default of the person making and breaching the warranty ” (pp. 31-32). And, after reviewing the history of the remedy of breach of Avarranty it was held that it Avas. For, as the court pointed out, prior to the action for assumpsit, the remedy for breach of warranty Avas *362 an action on the case for deceit. (Ames, Lectures on Legal History [1913], p. 136.) “ Under each cause of action, whether framed in tort or on contract, default or breach of duty involves an injury. At times the same facts may warrant procedure ex contractu or ex delicto. At such times recovery is not conditioned on definition nor measured by a determination of whether it is grounded in a violation of a duty owing to another or in a breach of a contractual obligation. Nor is an action any the less on contract because the elements of damage arise out of a trespass (Sullivan v. Dunham, 161 N. Y. 290), or an assault (Busch v. Interborough R. T. Co. [187 N. Y. 388]), or other personal injury (Doedt v. Wiswall, 15 How. Pr. 128; affd. 15 How. Pr. 145; Gillespie v. Brooklyn Heights R. R. Co., 178 N. Y. 347). Violation of a duty owing to another is a wrongful act; breach of a contract involving violation of duty may be likewise a wrongful act. Here, the duty rested on defendant to see, at its peril, that the food was fit for human consumption and it is based on considerations of public health and public policy (Race v. Krum [222 N. Y. 410], supra). Though the action may be brought solely for the breach of the implied warranty, the breach is a wrongful act, a default and, in its essential nature, a tort. ” (Greco v. Kresge Co., supra, p. 34.)
Historically the law of warranty is older by a century than special assumpsit. The original character of the action cannot safely be lost sight of and the seller’s liability upon a warranty may sound in tort as well as in contract. (1 "VVilliston, Sales, § 195, pp. 501-502; see, also, Prosser, Torts [2d ed.], § 83; 77 C. J. S., Sales, § 354, p. 1262.)
In respect of damages recoverable in food cases, the Legislature has disregarded the spurious distinction between tort and contract and has provided for the measure of damages as “ the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty.” (Personal Property Law, § 150, subd. 6; and, see, Tremeroli v. Austin Trailer Equipment Co., 102 Cal. App. 2d 464; Ryan v. Progressive Grocery Stores, 255 N. Y. 388, 395.)
Although affirmative proof of negligence on the defendant’s part is not involved in these cases, contributory negligence may be asserted as a defense. (See Fredendall v. Abraham & Sraus, 279 N. Y. 146.) Accordingly, if damages for fright without physical contact are recoverable in tort and negligence cases as determined by the Rattalla decision, the same result should also obtain in the case of breach of warranty in foreign substance food cases. Indeed, defendant concedes that the reversal of the rule of Mitchell v. Rochester Ry. Co. (151 N. Y. 107, supra) *363 by the Battalla decision (10 N Y 2d 237, supra) “in no way affects the instant case for it merely makes universal that which has always applied to foreign substance cases
This leads us to the crux of defendant’s argument. Defendant is concerned with the question as to the burden of proof of the plaintiff, and properly so. Defendant argues that the failure to produce medical testimony to sustain causal relation is fatal to the plaintiff’s case. This argument is not tenable. It requires no medical proof to permit an inference of causation of nausea by reason of the sight of something that is repulsive and unwholesome in the food that plaintiff is in the process of eating, be it a fly, a worm or other repulsive organism. (Campbell v. Safeway Stores, 149 A. 2d 420, 422 [D. C.], and cases there cited; Shaw v. Tague, 257 N. Y. 193; and see, also, Cernes v. Pittsburg Coca Cola Bottling Co., 183 Kan. 758.) Uffner v. Campbell Soup Co. (207 Misc. 21) relied on by the defendant, is not to the contrary. There the court without a jury found as a fact that plaintiff failed to show any connection between the presence of the dead fly in the soup and the alleged illness, and without medical testimony to support the case he could not make such a finding of fact. The court distinguished the case from Carroll v. New York Pie Baking Co. (215 App. Div. 240 [2d Dept., 1926]) on the ground that in the latter case there was medical testimony that the sight of cockroaches imbedded in the pie crust caused a psychic reaction in the plaintiff with resultant nervous gastritis. However, the court in the Carroll case based its decision on the general rule of damages in tort cases. The court further cited cases where plaintiff was denied recovery because there was no sufficient proof to warrant a factual finding by the triers of the facts as to causal connection between the presence of a nail in a piece of mince pie (Copeland v. Woolworth Co., 187 Misc. 456); or sediment in the beer (Willis v. Safeway Stores, 199 Misc. 821); or pieces of cork in a bottle of beer (Weinberg v. Doelger Brewing Co., 174 N. Y. S. 69) and the illness claimed by the plaintiff, but that does not mean that medical testimony is necessary in every case. Where a reasonable inference of causation as a matter of common sense and ordinary experience may be found by the jury and the jury does so find, the court should not substitute its own determination for that of the jury unless it is clearly unsupported by the facts. Where no medical testimony was introduced and plaintiff testified that she drank some Coca-Cola, felt something in her throat, she pulled it out, and saw that it was some kind of insect, and then she vomited and was made ill, the Appellate Division, Third Department, reversed dismissal of the complaint and reinstated *364 judgment for the plaintiff, saying: “When the results of an alleged act of negligence are such that they are within the experience and observation of an ordinary layman, a jury or a court sitting as a trier of the facts can draw a conclusion as to causal connection without the necessity of expert testimony (Meiselman v. Crown Hgts. Hosp., 285 N. Y. 389; Shaw v. Taque, 257 N. Y. 193). Such is the case here where the resulting illness was simply nausea which followed upon the drinking of soft drink containing an insect which is certainly a revolting foreign substance ”. (Mitchell v. Coca-Cola Bottling Co., 11 A D 2d 579, 580.)
Aside from practice and policy considerations, there is no longer any reason for separating the mental aspects of damages from the physical. Whatever the earlier view to the contrary may have been, modern judicial opinion now realizes the interrelationship between the physical organism with the emotional or mental. This has been demonstrated experimentally and clinically and there seems little doubt in the light of psychosomatic discoveries that emotions are accompanied and followed oj (and in a lay sense, cause) definite and readily observable physical reactions. (See Smith, Relation of Emotions to Injury and Disease, 30 Va. L. Rev., 193, 213; Ann. 64 A. L. R. 2d 104.)
In this connection, despite the concern of the court in Carroll v. New York Pie Baking Co. (215 App. Div. 240, supra) to distinguish the Mitchell case (a concern which no longer is necessary) its dictum is particularly apt. In that case the court said (p. 241): “If she had eaten the foreign substance contained in the pie and had then become ill there could be no question but that she would have been entitled to recover. We may, I think, with equal certainty go a step farther. If the article of food, when cut, had emitted an offensive odor which nauseated the plaintiff, her right to recover in this action would have been clear. Can her cause of action be any less clear because the repulsive character of the food was comprehended by sight rather than by taste or smell? In that connection we may also consider that the dissemination of disagreeable odors has, in numerous instances, been held to constitute a nuisance. That nuisances arising from disagreeable sights are not equally common is, I think, because disagreeable sights can be readily screened from view, but disagreeable odors cannot be easily controlled.”
The court specifically pointed out (p. 241) that the illness resulted from the “ repulsive and nauseating character of the food sold by the defendant. Under these circumstances the jury was required to determine whether the illness of the plaintiff was the natural and proximate result of the defendant’s negli *365 gence. In this connection we adopt, as stating the proper rule, the quotation made by the appellant from Garrison v. Sun Printing & Pub. Assn. (207 N. Y. 1): ‘ The general rule in torts applied to such actions as those of negligence is that a wrongdoer is responsible for the natural and proximate consequences of his conduct, and what are such consequences must be generally left for the determination of the jury. (Ehrgott v. Mayor, etc. of N. Y., 96 N. Y. 264, 282; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469.) The essential requirements in such cases are that the damages shall be directly traceable to the wrongful act and not the consequence of some intervening outside cause and that they shall be the natural result thereof.’ ”
It may be that medical proof is necessary to prove causal relation as to any protracted illness beyond the immediate psychic reaction. However, the jury in the case at bar in finding only $100 for the plaintiff, apparently rejected plaintiff’s claim for such protracted illness and accordingly the verdict will not be disturbed. The motion is denied.