## Wisniewski *v.* The Great Atlantic and Pacific Tea Company, Appellant.

Argued November 16, 1973. Before WRIGHT, P. J.,
WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ.
(SPAULDING, J., absent.)

*Robert C. Little,* with him *Burns, Manley & Little,* for appellant.

*Leo P. Hajdukiewicz,* with him *Samuel R. Sciullo,* for appellee.

OPINION BY JACOBS, J., April 3, 1974:

This is an appeal from judgment against the defendant in a products liability case under Article 2 of the Uniform Commercial Code.[1]  Both the denial of judgment n.o.v. by the lower court in banc and its refusal to grant a new trial are assigned as error by the defendant on this appeal.  We affirm.

"In considering a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Isaac v. Continental Cas. Co.,* 442 Pa. 480, 482, 276 A.2d 299 (1971).  Viewed according to these principles, the facts may be stated as follows:

On December 16, 1967, plaintiff Angela Wisniewski purchased several loaves of bread from one of defendant's food stores.  The following day, she asked her 7-

---

[1] Uniform Commercial Code—Sales, Act of April 6, 1953, P. L. 3, §2-101 *et seq., reenacted,* Act of October 2, 1959, P. L. 1023, §2, 12A P. S. §2-101 *et seq.*

year-old daughter to prepare her a sandwich of chipped ham and mayonnaise on toast. The sandwich was made in the kitchen out of Mrs. Wisniewski's presence, and she consumed it without incident. She then granted the daughter permission to make a sandwich for herself.

Upon being called to the kitchen, Mrs. Wisniewski found the daughter coughing on something in her mouth and gagging. The child spit out a piece of red string and "something brown." In inspecting the kitchen for a source of the materials in question, Mrs. Wisniewski noticed the sandwich ingredients, including a loaf of bread purchased the previous day, on the kitchen table. She testified: ". . . I looked at the bread and I just was shocked. I just couldn't believe it. . . . It was all brown stuff in there and string and it just looked awful."

Although the child apparently suffered no further adverse effects, Mrs. Wisniewski was struck by fright at the thought of having herself ingested poison. Her fear either generated or exacerbated a physical illness, which was diagnosed by a specialist in gastroenterology, to whom she had been sent on January 5, 1968, as diffuse and severe hemorrhagic gastritis.[2] The brown ma-

---

[2] "That means," according to the specialist's testimony, "the surface of the stomach was red, swollen and bleeding, oozing a slight amount of blood."

The specialist testified, in response to a question as to whether he had an opinion, based upon reasonable medical certainty, as to the cause of the complaints and conditions of Mrs. Wisniewski: "Yes, I do. . . . I believe that the emotional reaction, the nervous reaction of Mrs. Wisniewski to the ingestion of the bread with the foreign material in it led to either the flaring up of this hemorrhagic, the severe diffuse hemorrhagic gastritis that I described a few moments ago in the stomach or totally caused it."

He also testified: "[A]s far as the gastritis is concerned it would make no difference if she had swallowed the paper or not." And he stated: "The important thing is that she thought it was some kind of poison and this, I believe, triggered some emotional reaction in her." In response to a question as to whether Mrs. Wis-

terial in the bread was, it appears, some form of coarse paper. Substantial medical expenses were incurred by Mrs. Wisniewski following the incident described above.

The defendant was sued in assumpsit and the case was submitted to a jury on a theory of breach of the implied warranty of merchantability, under §2-314 of the Uniform Commercial Code.[3] The heart of this warranty is that the item sold is fit for the ordinary purposes for which such goods are used. R. Nordstrom, Handbook of the Law of Sales §76 (1970). Damages for breach of the warranty would be those resulting from the breach in the ordinary course of events.[4] Normally, the damages for such a breach are measured by the difference between the value of the goods accepted and their value as warranted, at the time and place of

---

niewski's fear was based on something that she tasted or felt in her mouth, he stated: "I just have a note that she told me she thought she was poisoned. That was the significant thing to me."

[3] "§2-314. *Implied Warranty: Merchantability; Usage of Trade* (1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale. (2) Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any. (3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade." Act of April 6, 1953, P. L. 3, §2-314, *reenacted*, Act of October 2, 1959, P. L. 1023, §2, 12A P.S. §2-314.

[4] §2-714(1), Uniform Commercial Code, Act of April 6, 1953, P. L. 3, *reenacted*, Act of October 2, 1959, P. L. 1023, §2, 12A P.S. §2-714(1).

acceptance.[5] But special circumstances showing proximate damages of a different amount will alter the rule,[6] permitting incidental and consequential damages to be recovered in a proper case.[7] Consequential damages include injury to person or property proximately resulting from the breach.[8]

At trial, the defendant's written requests for a jury instruction that the verdict had to be in its favor and for an instruction that the burden of proof was on Mrs. Wisniewski to show that she ate bread containing a foreign substance which was injurious to her health were denied.[9] The jury returned a verdict in favor of Mrs. Wisniewski in the sum of $4,100.

With regard to the denial of defendant's motion for judgment n.o.v., it must be remembered that "[t]he fundamental principle underlying the right of withdrawal of cases from the jury is that a case may be withdrawn only in clear cases in which as a matter of law the jury would not be legally justified in arriving at a verdict in favor of the party against whom the withdrawal is made." 6 Standard Pennsylvania Practice 259 (1960). In the context of the present case, the

---

[5] §2-714(2), Uniform Commercial Code, Act of April 6, 1953, P. L. 3, *reenacted*, Act of October 2, 1959, P. L. 1023, §2, 12A P.S. §2-714(2).

[6] *Id.*

[7] §2-714(3), Uniform Commercial Code, Act of April 6, 1953, P. L. 3, *reenacted*, Act of October 2, 1959, P. L. 1023, §2, 12A P.S. §2-714(3).

[8] §2-715(2)(b), Uniform Commercial Code, Act of April 6, 1953, P. L. 3, *reenacted*, Act of October 2, 1959, P. L. 1023, §2, 12A P.S. §2-715(2)(b).

[9] Defendant's request for an instruction that Mrs. Wisniewski could not recover if her injuries resulted merely from fright or nervous shock and not from actual physical injury caused by the bread and the substances contained therein was also denied; its request for an instruction that Mrs. Wisniewski could not recover if her injuries were caused solely by fright, nervous shock or emotional distress over the condition of her daughter was granted.

question to be determined is whether the principles of damage law under the pertinent sections of the Uniform Commercial Code as above recited permit recovery for Mrs. Wisniewski's harm under the facts as above related.

The import of the cited damage sections is that personal injury proximately caused by breach of the warranty of merchantability with respect to food is compensable.[10] Proximate causation, or legal causation with respect to negligent conduct,[11] is a term familiar in tort law,[12] as to which a considerable body of law has developed. It generally denotes more than mere causation-in-fact,[13] and serves as a means by which courts are able to place practical limits on liability as a matter of policy.[14] In Pennsylvania, a proximate cause is "[t]hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Coyne v. Pittsburgh Rys.*, 393 Pa. 326, 334, 141 A.2d 830, 835 (1958); *Whitley v. Philadelphia Transp. Co.*, 211 Pa. Superior Ct. 288, 294, 234 A.2d 922, 925 (1967).

Where conduct is a substantial factor in bringing about a certain harm, and where there is no rule of law relieving the actor from liability because of the manner in which the conduct has resulted in the harm, the

---

[10] *See Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968); *cf. Oehler v. Davis*, 223 Pa. Superior Ct. 333, 298 A.2d 895 (1972) (examination of causation requisites under §402A of Restatement (Second) of Torts).

[11] *See Whitner v. Lojeski*, 437 Pa. 448, 263 A.2d 889 (1970).

[12] As to the tort nature of damages under §2-715(2)(b) of the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, *reenacted*, Act of October 2, 1959, P. L. 1023, §2, 12A P.S. §2-715(2)(b), *see* R. Nordstrom, Handbook of the Law of Sales §153 (1970).

[13] Restatement (Second) of Torts §431, comment *a* (1965).

[14] *See Whitner v. Lojeski*, 437 Pa. 448, 263 A.2d 889 (1970); W. Prosser, Handbook of the Law of Torts §41 (4th ed. 1971).

test for proximate or legal causation is met in negligence law, and the harm may be attributed to the conduct. Restatement (Second) of Torts §431 (1965); *see Dollison v. Baltimore & O. R.R.*, 446 Pa. 96, 284 A.2d 704 (1971) (section 431 of Restatement (Second) of Torts cited with apparent approval).

With respect to the substantial factor requirement, the following considerations are important in determining whether conduct constitutes such a factor: the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; whether the conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and lapse of time. Restatement (Second) of Torts §433 (1965); *see Heck v. Beryllium Corp.*, 424 Pa. 140, 226 A.2d 87 (1966) (section 433 of Restatement (Second) of Torts followed as to first consideration listed above).

With respect to the no-rule-of-law requirement, the fact that conduct in question is not accompanied by a reasonable foreseeability as to the extent of the harm or the manner in which it occurs does not preclude liability, unless in retrospect it appears to the court that the harm was a highly extraordinary result of the conduct. Restatement (Second) of Torts §435 (1965); *see Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965). And it is the position of the Restatement (Second) of Torts that the fact that bodily harm results solely from fright, and that the conduct causing such fright risked only bodily harm and not fright, does not preclude liability. Restatement (Second) of Torts §436(2) (1965); *see Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970) (section cited as consistent with holding of case that impact of negligently driven vehicle on plaintiff was not precondition to recovery in

tort where personal danger of impact, actual fear of impact, and coronary insufficiency, coronary failure, angina pectoris, and possible myocardial infarction resulting from plaintiff's fright were present). In a comment to the latter section, it is stated: "[T]he fact that the [acting party] should realize that the other's fright may be dangerous to his health . . . is immaterial here. It is enough that, in view of the [injured party's] actual, as distinguished from his reasonably foreseeable, emotional stability or instability and physical condition, it is not extraordinary that the emotional distress should have brought on the illness. While it is necessary that the negligent conduct be a substantial factor in bringing about the fright and that the fright also be a substantial factor in bringing about the illness, it is not necessary that the fright be a probable result of the negligence nor the illness a probable result of the fright. It is enough that it is a 'natural' result, using that word as denoting that men of ordinary experience and judgment would not regard the result as extraordinary, after expert testimony has given them the medical information necessary to enable them to form an intelligent opinion." Restatement (Second) of Torts §436, comment *d* (1965).[15]

We have no difficulty in concluding that the defective condition of the defendant's bread in the present case could be found by a jury to have constituted a substantial factor in bringing about or exacerbating Mrs. Wisniewski's gastritis. As to whether any rule of law would preclude liability because of the manner in which the gastritis occurred, we believe that sections 435 and

---

[15] The lower court noted in its charge that the defendant would not be liable if the harmful result were caused "by an extremely unusual or bizarre idiosyncrasy of the individual who suffers the harm." Nothing in the testimony, however, compelled a conclusion that an extraordinary result, within the meaning of the comment to the Restatement, had occurred in the present case.

436(2) of the Restatement (Second) of Torts, the ability of merchants to incorporate the costs of product risks into their products, and the willingness of the Pennsylvania Supreme Court to permit in narrowly drawn situations recovery for physical injury from fright alone warrant an answer in the negative. *Cf. Medeiros v. Coca-Cola Bottling Co.,* 57 Cal. App. 2d 707, 135 P.2d 676 (1943) ; *Gay v. A & P Food Stores,* 39 Misc. 2d 360, 240 N.Y.S.2d 809 (Civ. Ct. of N.Y. City 1963) ; *see generally* 2 L. Frumer & M. Friedman, Products Liability §25.01[2] (1973). Specifically, we hold that a buyer may recover under §2-715(2)(b) of the Uniform Commercial Code[16] for reasonable and necessary medical expenses incident to a physical injury directly resulting from actual fear of having ingested a poisonous substance in a defective food product of the present type sold by a defendant merchant, where it is not extraordinary that the injury was thus produced. [17]

With regard to the denial of defendant's motion for a new trial, we will not reverse the decision in the absence of a manifest abuse of discretion or a clear error of law. *Eldridge v. Melcher,* 226 Pa. Superior Ct. 381, 313 A.2d 750 (1973). It is the defendant's contention that the lower court erred in refusing to charge the jury that the burden of proof was on Mrs. Wisniewski to show that she ate bread containing a foreign substance which was injurious to her health; it is asserted that the refusal to so charge effectively withdrew from the jury's consideration the question of whether the bread in question was unfit for human consumption. A reading of the entire charge does not support the

---

[16] Act of April 6, 1953, P. L. 3, *reenacted,* Act of October 2, 1959, P. L. 1023, §2, 12A P.S. §2-715(2)(b).

[17] We refrain from deciding what elements of damage other than actual medical expenses may be compensable, the divisibility of damages in this respect not having been raised by appellant on appeal.

defendant's contention that the issue was withdrawn from the jury's consideration. Furthermore, the requested charge was incorrect to the extent that it required actual consumption of the bread by Mrs. Wisniewski—it was sufficient that she reasonably assumed she had eaten it; the lower court was not required to rewrite the proposed instruction so as to correct its defect. 38 P.L.E. *Trial* §313 (1961).

Judgment affirmed.

CERCONE, J., concurs in the result.