396 A.2d 1349

**Irving KRÁVINSKY and Reeda Kravinsky, Appellees,**

v.

**Roscoe GLOVER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1978.

Decided Jan. 19, 1979.

Douglas P. Coopersmith, Philadelphia, for appellant.

Lawrence Flick, Philadelphia, for appellees.

Before PRICE, HESTER and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in (1) qualifying a behavior therapist as an expert on causation, (2) finding that the therapist's testimony was sufficient to establish causation, and (3) admitting certain bills of expenses into evidence and, as a result, refusing to grant a new trial on damages because the verdict was excessive. We find that $330 of expenses were improperly admitted and, accordingly, direct that the judgment in favor of appellee be reduced by that amount. In all other respects, we affirm the order of the lower court.

On May 22, 1970, at approximately 8:00 a. m., the automobile driven by appellant Glover collided with the automobile in which appellee Reeda Kravinsky was a passenger. On April 19, 1972, Reeda Kravinsky filed a complaint in trespass alleging that appellant's negligent operation of his car caused the collision and that as a result, she suffered certain physical injuries, pain and suffering, mental anguish, loss of earnings, acute anxiety, and "aggravation of a pre-existing emotional disorder with development of severe phobia."[1] On March 31, 1977, the lower court, in a nonjury trial, heard testimony, initially on damages and then on liability.

1. In the same complaint, Irving Kravinsky, Reeda Kravinsky's husband and driver of the automobile in which she was a passenger, also sued appellant for physical injuries sustained in the collision. The lower court found in favor of appellant against Irving Kravinsky. That verdict was not appealed. Hence, our consideration and disposition are limited to those issues relevant to the verdict in favor of Reeda Kravinsky.

After appellant waived objection to Dr. Donald Stoltz's qualifications as a treating osteopathic physician, Dr. Stoltz testified that, on May 22, 1970, he examined Reeda Kravinsky and diagnosed her condition as:

"A. . . . Contusion of the right knee and leg. Contusion of the right arm and elbow with marked discoloration and swelling.

"Acute cervical sprain with cervical and thoracic myositis and muscular spasm. Acute low back sprain with marked lumbar myalgia. Post-traumatic headaches and vertigo. Acute anxiety."

Dr. Stolz sent Mrs. Kravinsky to a Dr. Anthony Borden for x-ray studies of her cervical spine, dorsal spine, right shoulder and arm. On the basis of what the Kravinskys told him about the collision, his physical examination of Mrs. Kravinsky, and Dr. Borden's report on her x-rays, Dr. Stoltz prescribed a course of treatment for Mrs. Kravinsky of physical therapy—specifically, diathermy, ultrasound, and manipulation—and drug therapy—analgesics, muscle relaxants, anti-inflammatory enzymes, sedatives and tranquilizers for Mrs. Kravinsky's "anxiety, as far as the fear that she had . . .;" Dr. Stoltz did not describe the anxiety in more detail or identify the object of her fear. He further testified that, based on his physical examinations of Mr. and Mrs. Kravinsky and what they told him about the collision, he "would say that the injuries that they suffered from were sustained in an automobile accident on the date of the incident."

Dr. Stoltz treated Mrs. Kravinsky in his office on 34 occasions, the last visit occurring on September 8, 1970; he charged her $15 for the initial visit and $6 for each visit thereafter, for a total bill of $213. Over appellant's objection, Dr. Stoltz identified Dr. Borden's $90 medical bill for the x-ray studies performed on Mrs. Kravinsky at his request; Dr. Borden did not testify. The court admitted into evidence both Dr. Stoltz's bill and, over appellant's objection, Dr. Borden's bill.

Over appellant's objection, the lower court ruled that the second witness, Dr. L. Michael Ascher, a behavior therapist,[2] was qualified[3] to testify as an expert psychologist. He testified that he treated Mrs. Kravinsky, unsuccessfully, in 10 sessions from November 25, 1975 to February 24, 1976, using a desensitization technique.[4] Each session cost $50, for a total of $500. During his initial interview with Mrs. Kravinsky on November 25, 1975, Dr. Ascher obtained her general history but focused on her driving behavior and driving-related incidents. From this history, he learned that in March 1970, the brakes in her car failed while she was driving. This experience upset her, and, although she continued to drive in an efficient manner, she sought the assistance of a psychologist shortly thereafter. Immediately after the collision on May 22, 1970, she did not drive at all for some period of time. When Dr. Ascher saw her in November 1975, Mrs. Kravinsky was driving occasionally but always "at a very slow speed . . . ten to fifteen miles per hours because anxiety in driving elicited this in her and she would have to stop frequently to allow the anxiety to dissipate . . . ." On the basis of this history, Dr. Ascher diagnosed that Mrs. Kravinsky suffered from driving phobia. He defined a phobic reaction as "a set of anatomic responses and a set of anxieties, made to a stimulus which is

2. Dr. Ascher defined behavior therapy as follows:
"A. . . . Behavior therapy assumes that behavior is learned, that it is not due to, let's say, internal dynamics. It is due to learning based upon experience with external stimuli. . . ."

3. Details of Dr. Ascher's qualifications included: a) Ph.D. in psychology from the University of Pittsburgh in 1968; b) one-year general internship in clinical psychology at the University of Massachusetts; c) one year of post-doctoral training in behavior therapy at Temple University's Department of Psychiatry; d) three years of teaching undergraduate psychology courses at State University of New York in Buffalo; e) fulltime private practice for almost five years by the time of trial; f) treatment of 20 to 25 patients specifically for driving phobia; g) author of several articles on therapy techniques useful in treating phobics. At the time of trial, Dr. Ascher was head of the outpatient treatment facility of the behavior therapy unit at Temple University's Department of Psychiatry.

4. By this method, he attempted to convince Mrs. Kravinsky that her driving would not lead to disastrous consequences.

not a clear danger." Specifically, he found that Mrs. Kravinsky "had an anxiety response when she thought about driving, when she looked at the car. Even when she sat in the car as a passenger she had an anxiety response. . . a phobic response."

Based upon the above history and his observation of Mrs. Kravinsky, Dr. Ascher formed the following opinion as to the cause of her driving phobia:

"A. I felt that a significant cause was the accident of May [22], 1970."

On cross-examination, Dr. Ascher amplified:

"Q. If there were such a mishap between May 22, 1970, and the time you saw Mrs. Kravinsky, in your expert opinion do you think that would have some bearing on her anxieties?

. . . . .

"A. It was my opinion that her behavioral difficulty obviously began on May 22, as a result of that accident.

"Q. Didn't you just say that she had anxieties about driving from the prior accident?

"A. Yes, but she was driving.

. . . . .

"A. (Continuing) She was driving in an efficient manner before that time.

. . . . .

"Q. You did say, in response to counsel's question, what affect did the accident of May 22 have on Mrs. Kravinsky, your answer was, and I quoted you on that, 'It was a significant cause.' Not the cause, but a significant cause.

"What does that mean?

"A.. That means that there are many factors that influence any particular—any behavior in any particular human being. So it would go beyond my abilities to say what the exact cause of a specific problem was.

"Q. In other words, what you are saying is what causes her fear of driving you don't know?

"A. No, I didn't say that.

. . . . .

"A. What I am saying is that I can tell you the things that contributed to Mrs. Kravinsky's problem. It was obvious to me that there was not one overriding factor, but that there were other related problems.

"Q. What were those related problems?

"A. Well, the difficulty she had on March—

MR. ELASH: 1970.

"A. (Continuing) 1970.

"Q. That is one?

"A. That is one.

"Q. Were there others?

"A. I couldn't see any others, no."

Mr. and Mrs. Kravinsky then testified about the collision, their injuries, and the treatment they received. Concerning the collision, they both testified that appellant's car came from a cross street and rammed into their car while they were proceeding in an intersection on a green light. The impact of the collision spun the Kravinskys' car around, throwing them about inside and injuring them. Mrs. Kravinsky described her physical injuries and Dr. Stoltz's treatment. She did not testify that she ever discussed her driving phobia with Dr. Stoltz. She did not complain of any continuing physical problem. Both Mr. and Mrs. Kravinsky testified that she was a little apprehensive and over-cautious in her driving after the brake failure in March 1970. Immediately after the May 22, 1970 accident, however, she felt "panic-stricken fear" about driving. She refused to enter a car for periods of several weeks. Later, she allowed herself to be driven and attempted, on occasion, to drive herself. At the time of trial, Mrs. Kravinsky drove only when she had to, when she could not obtain a taxi or a ride from her family or friends, and only at off hours and on back streets, where she could drive at 10 to 15 miles per hour and could stop frequently. Her job as a school administrator required her to travel to various schools; when she had to drive herself to these schools, she felt nervous and humiliated.

Mrs. Kravinsky testified that she sought help for her psychological condition from a number of specialists, all to no avail.[5] Over appellant's objection, she identified bills from all of these specialists, except Dr. Ascher. None of these specialists testified, except Dr. Ascher. Neither Dr. Stoltz nor Dr. Ascher made any comment on the treatment given by the nontestifying specialists or on the resulting expenses. The lower court, over appellant's objection, admitted the following bills into evidence: (a) from Dr. Louis Gershman, a behavior therapist, two bills, for a total of $110 for four sessions soon after the May 22, 1970 collision; (b) from the American Institute of Hypnotherapy, $150 for six sessions from July 9, 1970 to July 29, 1970; and (c) from Dr. Hans Abraham, $70 for four sessions of hypnosis from October 13, 1973 to December 24, 1973.[6]

Appellant presented no testimony or documentary evidence to rebut either liability or damages. On May 3, 1977, the lower court rendered a verdict in favor of appellee Reeda Kravinsky against appellant for $9000. On June 21, 1977, the lower court dismissed appellant's exceptions. This appeal followed.

Preliminarily, we note that, although Mrs. Kravinsky's aggravated condition [7] manifested itself very soon af-

---

5. Specifically, Mrs. Kravinsky testified that: (a) because of her anxiety about the brake failure in March 1970, she saw Dr. Louis Gershman, a behavior therapist, who tried, unsuccessfully, to teach her to transfer pleasurable feelings to her driving experience—the collision with appellant occurred during this treatment and she stopped seeing Dr. Gershman in June 1970; (b) she next underwent six or seven unsuccessful sessions of hypnosis at the American Institute of Hypnotherapy; (c) her subsequent sessions with Dr. Hans Abraham, who also put her under hypnosis, were equally unsuccessful; (d) she then had 11 unsuccessful sessions with Dr. Goldblatt, a psychotherapist; (e) Mrs. Kravinsky's final 10 sessions with Dr. Ascher were also unsuccessful.

6. Counsel for Mrs. Kravinsky withdrew the bill from Dr. Goldblatt.

7. Mrs. Kravinsky could recover even though she had a pre-existing condition, *Boushell v. J. H. Beers, Inc.*, 215 Pa.Super. 439, 258 A.2d 682 (1969); Restatement (Second) of Torts, § 461 (1965), if she could prove through expert testimony that the accident was a substantial factor in bringing about the aggravation of the condition. *Wargo v.*

ter the accident when she refused to enter any automobile for several weeks, we do not think that driving phobia is such an obvious, natural, or probable result of the car collision that a trier of fact could determine causation without the aid of expert testimony.[8] *Smith v. German,* 434 Pa. 47, 253 A.2d 107 (1969) (expert must show causal connection between severe personality change and automobile accident or marital difficulties); *Pagan v. DeWitt P. Henry Co.,* 27 Pa.Cmwlth. 495, 365 A.2d 463 (1976) (expert must show causal link between schizophrenia and slip and fall on head); *Carey v. Schwartz,* 133 Pa.Super. 604, 3 A.2d 203 (1938) (expert must show causal link between child's mental retardation and speech defect and automobile accident in which child fractured ankle and suffered laceration of her head). *See Hamil v. Bashline,* 481 Pa. 256, 267, 392 A.2d 1280, 1285 (1978) (bodily injuries usually require expert testimony on causation). *Cf. Hess v. Philadelphia Transp. Co.,* 358 Pa. 144, 56 A.2d 89 (1948) (causal link between electric shock and intense psychoneurosis proved by expert testimony).

Appellant first contends that Dr. Ascher was not qualified to testify as an expert on the cause of Reeda Kravinsky's driving phobia. Specifically he claims that behavior therapists are not qualified to testify about the cause of emotional disorders and that Dr. Ascher lacked a factual basis upon

*Pittsburgh Rys. Co.,* 376 Pa. 168, 101 A.2d 638 (1954); *Sonson v. J. C. Penney Company,* 361 Pa. 572, 65 A.2d 382 (1949). *Cf. Heck v. Beryllium Corporation,* 424 Pa. 140, 226 A.2d 87 (1966); *Offensend v. Atlantic Refining Co.,* 322 Pa. 399, 185 A. 745 (1936).

**8.** From our review of the record, we conclude that Dr. Stoltz's testimony was too vague to establish a causal link between the collision and Mrs. Kravinsky's driving phobia. He did not diagnose the phobia, only "acute anxiety." Nothing in the record reveals with any certainty that he had any knowledge of the phobia. He referred only once to a "fear" which Mrs. Kravinsky had, but he never defined or described it. Expert testimony is incompetent if it lacks an adequate basis in fact or if the manner in which it is expressed is deficient. *Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 435, 357 A.2d 635, 637 (1976). Under these circumstances, we cannot with any confidence conclude that Dr. Stoltz was referring to Mrs. Kravinsky's driving phobia when he testified about "the injuries that [the Kravinskys] suffered."

which to give competent testimony on causation. We disagree.

Our Supreme Court has stated that "the qualification of an expert witness is a matter which is within the discretion of the trial court . . ." *Abbott v. Onopiuk,* 437 Pa. 412, 421, 263 A.2d 881, 885 (1970). *Duffy v. National Janitorial Services, Inc.,* 429 Pa. 334, 337, 240 A.2d 527, 529 (1968). "If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he or she is qualified as an expert." *Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974). *See Steele v. Shepperd,* 411 Pa. 481, 483, 192 A.2d 397, 398 (1963). "Clinical psychologists have been acknowledged as experts qualified to testify on diagnosis, prognosis, and causation of emotional disturbance." *Simmons v. Mullen,* 231 Pa.Super. 199, 208, 331 A.2d 892, 897–98 n. 2 (1975). However, it is an abuse of discretion to admit an expert's opinion if it lacks an adequate factual basis. *Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 357 A.2d 635 (1976). *See Laubach v. Haigh,* 433 Pa. 487, 491, 252 A.2d 682, 683 (1969). Thus, in *Simmons v. Mullen, supra,* 231 Pa.Super. at 208, 331 A.2d at 898–99 (1975), we found that "an eminently qualified" psychologist's opinion concerning the cause of a party's brain damage was incompetent testimony because his methods of examining the plaintiff exposed only the existence of injuries and not their cause. Once an expert shows he had some basis in fact for his opinion, his testimony is admissible. *Ritson v. Don Allen Chevrolet,* 233 Pa.Super. 112, 336 A.2d 359 (1975). From our review of Dr. Ascher's qualifications,[9] we conclude that the lower court did not err in qualifying him as an expert in psychology. Moreover, we find that his method of examining Mrs. Kravinsky, by obtaining a general history with special focus upon her driving experiences, provided him with an adequate basis for his opinion concerning the cause of her driving phobia.

**9.** *See* note 3, *supra.*

██ ██ Appellant next contends that Dr. Ascher's testimony was not sufficiently certain to establish the causal link between the car collision and Mrs. Kravinsky's driving phobia. When a party must prove causation through expert testimony the expert must testify with "reasonable certainty" that "in his 'professional opinion, the result in question did come from the cause alleged.'" *McCrosson v. Philadelphia Rapid Transit Co.*, 283 Pa. 492, 496, 129 A. 568, 569 (1925). *See Hamil v. Bashline, supra.* An expert fails this standard of certainty if he testifies "'that the alleged cause "possibly", or "could have" led to the result, that it "could very properly account" for the result, or even that it was "very highly probable" that it caused the result.' *Niggel v. Sears, Roebuck & Co.*, 219 Pa.Super. 353, 354, 355, 281 A.2d 718, 719 (1971); *Menarde v. Philadelphia Trans. Co.*, 376 Pa. 497, 103 A.2d 681 (1954); *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256 (1926); *Moyer v. Ford Motor Co.*, 205 Pa.Super. 384, 209 A.2d 43 (1965)." *Albert v. Alter*, 252 Pa.Super. 203, 225, 381 A.2d 459, 470 (1977).

 "The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a[n] . . . expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that the condition was legally caused by the defendant's conduct. . . . [I]t is the intent of our law that if the plaintiff's . . . expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a [factfinder] can make a decision with sufficient certainty so as to make a legal judgment." *McMahon v. Young*, 442 Pa. 484, 486, 276 A.2d 534, 535 (1971). However, to make an admissible statement on causation, an expert need not testify with absolute certainty or rule out all possible causes of a condition. *Bialek v. Pittsburgh Brewing Company*, 430 Pa. 176, 242 A.2d 231 (1968); *Ritson v. Don Allen Chevrolet, supra.* Expert testimony is admissible when, *taken in its entirety*, it expresses

reasonable certainty that the accident was a substantial factor [10] in bringing about the injury. *Hussey v. May Department Stores, Inc., supra*, 238 Pa.Super. at 437, 357 A.2d at 638. The expert need not express his opinion in precisely the same language we use to enunciate the legal standard. *See In re Jones*, 432 Pa. 44, 246 A.2d 356 (1968) (medical testimony need not conform to precise statutory definitions). That an expert may, at some point during his testimony, qualify his assertion does not necessarily render his opinion inadmissibly speculative.[11] *Woods v. Pleasant Hills Motor Company*, 454 Pa. 224, 309 A.2d 698 (1973); *Commonwealth v. Joseph*, 451 Pa. 440, 304 A.2d 163 (1973).

▉ Applying the above standard to the instant case, we conclude that Dr. Ascher's expert testimony was sufficiently

10. "It is well established in Pennsylvania that in order to find that defendant proximately caused an injury it must be found that his allegedly wrongful conduct was a substantial factor in bringing about plaintiff's injury even though it need not be the only factor. *Diakolios v. Sears, Roebuck & Co.*, 387 Pa. 184, 127 A.2d 603 (1956); *Simon v. Hudson Coal Co.*, 350 Pa. 82, 38 A.2d 259 (1944); *Krauss v. Greenbarg*, 137 F.2d 569 (3rd Cir. 1943), cert. den. 320 U.S. 791, 64 S.Ct. 207, 88 L.Ed. 477, rehearing denied 320 U.S. 815, 64 S.Ct. 368, 88 L.Ed. 492; *Jenkins v. Nicholson*, 162 F.Supp. 167 (E.D.Pa.1958). It is equally well established that defendant's negligent conduct is not a substantial factor in bringing about plaintiff's injury if it would have been sustained even if the actor had not been negligent. Restatement of Torts § 432; *DeAngelis v. Burns*, 404 Pa. 230, 171 A.2d 762 (1961); *Simon v. Hudson Coal Co., supra*." *Majors v. Brodhead Hotel*, 416 Pa. 265, 271, 205 A.2d 873, 877 (1965). Thus, " 'the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence.' *Carlson v. A. & P. Corrugated Box Corporation*, 364 Pa. 216, 223, 72 A.2d 290, 293 (1950). See *Yenchko v. Grontkowski*, 385 Pa. 272, 122 A.2d 705 (1956)." *Id.*, 416 Pa. at 273, 205 A.2d at 878. *Hamil v. Bashline, supra*; Restatement (Second) of Torts, §§ 432 and 433 B (1965).

11. *Accord*, Feldman, Pennsylvania Trial Guide I, § 7.80: "Nor is the expert's testimony destroyed by the fact that in one part of his testimony he used language weaker than the requisite shiboleth, provided that at some point he states his opinion with sufficient definiteness." (1975 Supplement). *Distinguish Brannan v. Lankenau Hospital*, 254 Pa.Super. 352, 357–364, 385 A.2d 1376, 1379–82 (1978), where an expert withdrew his initial opinion and did not offer any support for his earlier statement.

definite and certain to establish a causal link between the collision of May 22, 1970 and Mrs. Kravinsky's driving phobia. His initial statement that he felt that the collision was a significant cause of her phobic condition clearly expresses a professional judgment of reasonable certainty. *Euker v. Welsbach Street Lighting Co. of America,* 149 Pa.Super. 78, 25 A.2d 758 (1942). That he characterized the collision as a "significant cause" rather than a "substantial factor" makes no difference,[12] *In re Jones, supra*; the testimony established proximate cause, *Hamil v. Bashline, supra; Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A.2d 873 (1965); Restatement (Second) of Torts, § 432 (1965). His subsequent testimony that there was not one overriding factor contributing to Mrs. Kravinsky's problem in no way contradicted his initial statement; rather, it underlined his belief that no one factor was solely responsible for her phobia. *Diakolios v. Sears Roebuck & Co.,* 387 Pa. 184, 127 A.2d 603 (1956). Moreover, Dr. Ascher's unequivocal testimony that "[i]t was [his] opinion that her behavioral difficulty obviously began on May 22, as a result of that accident" left no doubt that in Dr. Ascher's professional opinion the collision caused the aggravation of Mrs. Kravinsky's condition. Her "behavioral difficulty", described in Dr. Ascher's prior testimony as her temporary refusal even to enter an automobile, followed by her continued inability to drive in a normal fashion, precisely defined the manifestations of her driving phobia. Viewing all of the Dr. Ascher's testimony, we conclude that the lower court was correct in finding that his testimony established, with reasonable certainty, that the May 22, 1970 collision was a substantial factor in bringing about Mrs. Kravinsky's driving phobia.

Finally, appellant contends that, because the lower court erred in admitting certain bills into evidence, we should find the verdict excessive and remand for a new trial on damages. Although we agree that certain bills were improperly admitted, we do not find it necessary to remand for a new

12. Both *significant* and *substantial* mean *important* in common usage. Webster's Third New International Dictionary 2116, 2280 (1967).

24

trial on damages. Instead, we direct that the verdict be reduced by the amount of the improperly admitted bills; we do not find the verdict, so reduced, excessive.

Appellant has properly preserved for appeal only his challenge to the admission of bills for services rendered by Drs. Borden, Gershman, and Abraham and the American Institute of Hypnotherapy.[13] These bills are for $110, $70, and $150, respectively, for a total of $330. Neither Dr. Stoltz nor Dr. Ascher testified that the services rendered Mrs. Kravinsky by Drs. Gershman and Abraham and by the American Institute of Hypnotherapy were necessary. *Ratay v. Yu Chen Liu*, 215 Pa.Super. 547, 260 A.2d 484 (1969); *Piwoz v. Iannacone*, 406 Pa. 588, 178 A.2d 707 (1962). Nor does our review of the record reveal any circumstances from which the lower court could infer the necessity of those services. *Ratay, supra.* Thus, the lower court improperly admitted those three bills. In contrast, the lower court could infer the necessity of Dr. Borden's services because Dr. Stoltz, the treating physician, testified that he requested them. Dr. Stoltz's testimony also established the nature of Dr. Borden's x-ray studies and that those studies were in fact completed. From both Dr. Stoltz's and the Kravinskys' testimony the lower court could infer the reasonableness of Dr. Borden's $90 bill. *Yost v. City of Philadelphia*, 174 Pa.Super. 555, 559, 102 A.2d 210, 212 (1954). See *Fisher v. Pomeroy's Inc.*, 322 Pa. 389, 185 A. 296 (1936). Thus, the lower court properly admitted Dr. Borden's bill. *Ratay, supra.*

From the above analysis, we conclude that of a total of $1133 in expenses submitted to the court, $330 were improperly admitted leaving $803 properly admitted.[14] Because we presume that the lower court, as the trier of fact, "reflected in its verdict the elements of damage testified to, which the trial judge did not exclude, a deduction of the

13. *See* note 5, *supra*. None of these specialists testified at trial.

14. The bills of $213, $90, and $500 for the services of Drs. Stoltz, Borden and Ascher, respectively, total $803.

[improperly admitted amount] from the amount of the verdict will be just." *Bell v. Yellow Cab Company*, 399 Pa. 332, 341, 160 A.2d 437, 442 (1960). *See Fougeray v. Pflieger*, 314 Pa. 65, 170 A. 257 (1934). Accordingly, we direct that the verdict in favor of Reeda Kravinsky be reduced by $330, resulting in an adjusted verdict of $8670.

Turning to appellant's contention that the verdict is excessive we note that in *Skoda v. West Penn Power Co.*, 411 Pa. 323, 338, 191 A.2d 822, 830 (1963), our Supreme Court stated:

"Appellate courts are properly reluctant to interfere with jury verdicts in personal injury cases, which verdicts are supported by the opinion and approval of the trial judge and the court en banc. *Roadman v. Bellone*, 379 Pa. 483, 108 A.2d 754 (1954). The granting of refusal of a new trial because of excessiveness is peculiarly within the discretion of the court below and we will not interfere, absent a clear abuse of discretion. *Hall v. George*, 403 Pa. 563, 170 A.2d 367 (1961). We will not hold that a verdict is excessive unless it is 'so grossly excessive as to shock our sense of justice.' *Kane v. Scranton Transit Co.*, 372 Pa. 496, 94 A.2d 560 (1953), and cases cited therein." In *Robert v. Chodoff*, 259 Pa.Super. 332, 367–368, 393 A.2d 853, 871 (1978), we outlined some of the factors relevant in determining whether a verdict is excessive.

"(1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will affect the plaintiff permanently, (4) whether the plaintiff can continue with his employment, (5) the size of plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint." (footnote omitted). *See Kemp v. Philadelphia Transportation Co.*, 239 Pa.Super. 379, 361 A.2d 362 (1976). Mere disparity between the amount of the verdict and out-of-pocket expenses is not in itself sufficient grounds to disturb a verdict. In *Carminati v. Philadelphia Transportation Company*, 405 Pa. 500, 176 A.2d 440 (1962), our Supreme

Court upheld an award of $79,500 although medical expenses were less than $200. Similarly, we have sustained a verdict of $25,000 although medical expenses totalled only $549.60. *Simmons v. Mullen, supra,* 231 Pa.Super. at 33, 331 A.2d at 901.

Applying the above standards to the instant case, we find that Mrs. Kravinsky's physical injuries healed within a few months but the psychological injury continued up to the time of trial, approximately seven years after the accident. Both Mrs. Kravinsky and her husband testified about her continued inability to drive in a normal fashion and about the effect this inability had upon her. Although she functioned fairly well at home and at her job despite her continuing phobia of driving, she felt nervous and humiliated whenever she had to drive. Excluding the improperly admitted bills, we find that Mrs. Kravinsky spent $803. The adjusted verdict of $8670 is more than 10 times the amount of her out-of-pocket expenses but less than an amount "in excess of $10,000," which she demanded in her complaint. From the above facts, we conclude that the adjusted verdict is not excessive. *Bell, supra.*

Record remanded with directions that the verdict in favor of Reeda Kravinsky be reduced to $8,670 and that judgment be entered thereon. Thus entered, judgment affirmed.

PRICE, J., files a dissenting statement.

PRICE, Judge, dissenting.

I must conclude that the testimony of Dr. L. Michael Ascher was not sufficient to establish causation, *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978). Accepting the guidelines of *Hamil, supra,* it is not enough to note that the word "significant" as used by Dr. Ascher and the word "substantial" as approved in *Hamil* mean important. (See fn. 12, p. 1357 majority opn.) in common usage. To adopt such reasoning is to further dilute the test required to establish causation. This I refuse to do.

Webster's Dictionary indeed does couple "important" in both definitions. However, substantial is of or having sub-

stance, real, actual, true, not imaginary, strong, solid, firm and when "important" is used it is immediately followed by "essential." On the other hand, significant is having or expressing a meaning and when "important" is used it is followed by "weighty" and "notable."

When Dr. Ascher used the word "significant" I do not accept that word as denoting a professional judgment of reasonable certainty.

I further dissent as to the factor of the improperly admitted medical bills. It is agreed that this is not a claim of an excessive verdict, but it is a challenge to the evidence supporting the verdict. Viewed as such, all agree that the bills of Gershman, Abraham and the American Institute of Hypnotherapy[1] were improperly admitted (Majority opn. p. 1357). It is entirely speculation and guesswork to formulate an opinion on the part these improperly admitted bills played in reaching the verdict figure. Were this verdict reached solely on properly admitted specials I would have no difficulty in agreeing that it should not be disturbed. Because it was not I would not allow it to stand.

For both of these reasons I would vacate the entry of judgment and grant a new trial.

---

1. Dr. Gershman's bills were $110.00, Dr. Abraham's was $70.00 and the American Institute of Hypnotherapy was $150.00.