J-S53031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BAYTRIC BULLOCK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NEXT LEVEL AUTO CENTER, LLC | : | |
| | : | |
| Appellant | : | No. 1041 EDA 2020 |

Appeal from the Judgment Entered June 12, 2020
In the Court of Common Pleas of Monroe County Civil Division at No(s):
No. 2016-06880

BEFORE:   SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                 **FILED APRIL 28, 2021**

Next Level Auto Center, LLC (Next Level) appeals from the judgment entered against it and in favor of Baytric Bullock (Bullock) in the Court of Common Pleas of Monroe County (trial court) in Bullock's breach of contract action.  Next Level contends that the judgment must be set aside because Bullock failed to proffer competent expert testimony that was needed to support his claim. We affirm in part and vacate in part.

**I.**

We take the following factual background and procedural history from the trial court's June 6, 2018 opinion and our independent review of the record.  On September 26, 2016, Bullock filed a complaint against Next Level

_____

[*] Retired Senior Judge assigned to the Superior Court.

for breach of contract as well as a violation of the Unfair Trade Practices Act. 73 Pa.C.S. § 201-9.2(a). He alleged that work Next Level performed on his vehicle caused permanent damage to the engine and sought damages of $2,309.74 for costs paid to Next Level, $9,863.34 for the cost of repairing the engine, plus treble damages. Next Level's answer only responded to the breach of contract claim, but it counterclaimed seeking damages for defamation. A panel of arbitrators found in favor of Bullock but only awarded $2,309.74 in damages. Bullock appealed to the trial court on October 26, 2017. A *de novo* non-jury trial occurred on May 4, 2018.

## A.

At trial, Bullock testified on his own behalf and provided the testimony of Janice Stiff and Patrick Jeffers. Jerrod Kelly testified on behalf of Next Level.

Bullock testified that he bought a new 2016 Nissan 370-Z from Rothrock Nissan and took the vehicle to Next Level for performance upgrades. He spoke with Jerrod Kelly, the owner of Next Level, who recommended removing the catalytic converters, modifying the exhaust system with a Cat Back (which included a straight pipe) and installing a Bully Dog Tuner. Bullock stated that he did not know exactly what the Bully Dog Tuner did other than enhance performance, and Kelly explained that the addition of the Bully Dog Tuner allows the vehicle to override computer settings.

Although he admitted that he knew that a new exhaust system would not be covered under the vehicle's warranty, Bullock testified he did not realize

that the vehicle would no longer pass inspection and that no one from Next Level advised him that his vehicle would not be inspectable if the catalytic converters were removed. Contrary to this testimony, Kelly testified that he specifically told Bullock that removal of the catalytic converters and installation of straight pipes to the exhaust system would prevent the vehicle from passing inspection, but Bullock told him he was not worried because he had a shop that would pass it. Bullock paid $2,309.74 for Next Level's work.

Two days after the installation, the vehicle's check engine light activated. When Bullock called Kelly, he advised that he needed to install oxygen sensors as part of the work, but the parts had not yet come in. Kelly advised this would not harm the vehicle in the meantime. Two weeks later, the vehicle was sputtering and losing power, so Kelly told Bullock to bring it in for inspection. After working on the vehicle, Kelly advised taking the vehicle to Abeloff Nissan for further inspection. Kelly testified that he removed the Bully Dog Tuner before Bullock took the vehicle to the Nissan dealer because Abeloff Nissan would not want to deal with the engine with the Bully Dog Tuner on it. (**See id.** at 59-73, 78-79).

Janice Stiff, who has a Pennsylvania State Inspection License and was the Abeloff Nissan Assistant Service Manager at the time Bullock brought the vehicle in, testified that upon their initial inspection, a hose was found that was not attached to the engine causing the vehicle to overcompensate that could cause engine damage. Ms. Stiff prepared an estimate of $10,299.24 for

replacing the engine and $2,325.82 to reinstall the catalytic converters. She advised Bullock of the cost of the repairs and that the vehicle was out of warranty due to the removal of the catalytic converters and installation of after-market parts.

After being given the estimate, Bullock called Kelly who advised he had someone in New York who could repair the vehicle. Bullock told Ms. Stiff he was going to take the vehicle to New York because they would "warranty it." Kelly believed Abeloff Nissan was incorrect in concluding that the vehicle's problems were caused by an unattached hose since, according to him, Bullock had watched him as he reattached the hose during the initial installation work. (*See id.* at 36-39). Bullock testified that he had the vehicle towed to the New York dealer, but the dealer refused to do the work and called him to come remove the vehicle after ten days when he had it towed to Rothrock Nissan.

Patrick Jeffers, the Rothrock Nissan's Service Director and an Automobile Service Excellence (ASE) Master Certified Automobile Technician, testified as an expert in automotive mechanics and repair[1] that Bullock brought the vehicle in for drivability issues in August 2016. At this first interaction, Rothrock Nissan cleared a mass air flow sensor, which cleared the

_____

[1] Although Jeffers was Bullock's witness, Next Level moved for Jeffers' qualification as an expert during cross-examination. Neither of the parties identified any expert witnesses in their pre-trial statements, no expert report was prepared and, based on the record, Next Level never retained Jeffers or provided notice that it would be using Bullocks' fact witness as its own expert.

check engine light. Rothrock Nissan did not have any further information about the unattached hose or that there was anything else wrong with the vehicle at that time. Because the check engine light was cleared, Rothrock Nissan concluded its initial work. Jeffers explained that it would take the vehicle a period of time to acquire new information after the check engine light issue was cleared, which may be why Bullock drove the vehicle home without a problem. (*See id.* at 42, 43-45, 48-49).

Jeffers testified that Bullock brought the vehicle to Rothrock Nissan the next day. Nissan Motors sent out a field technical specialist and ultimately denied coverage due to the modifications that had been made to the vehicle. Rothrock Nissan confirmed that the rod knock noise was coming from within the combustion chamber in the cylinder block assembly of the engine requiring replacement. To determine which exact part broke within the cylinder block would have required removing the engine from the car, tearing it apart and sending the pieces back to Nissan Motors to be put back together. Bullock chose not to do this because of the high cost and since, regardless of the specific part that was broken, the cylinder would need replacement. (*See id.* at 46-47, 53-54, 56-58).

Jeffers explained that he could "rattle off numerous things that could have caused [the engine] to break, but none of them would be provable[]" or "100 percent certain." He agreed it was possible, since the speed had been unlocked, that driving the vehicle at high speeds could have caused the engine

to fail under specific circumstances. Jeffers stated, however, that "[a] lot of signs point to" the damage being caused by the disconnected hose since Abeloff Nissan found it when Bullock began experiencing vehicle issues a day after having the vehicle's catalytic converters removed and the Cat Back exhaust system and Bully Dog Tuner installed by Next Level. (*Id.* at 55-56).

After Rothrock Nissan made a full diagnosis, it recommended that Bullock replace the engine because the damage was to the cylinder block assembly. Bullock had the car towed home while he considered his options and returned in October 2016 to have the work done. Bullock testified that after he received an estimate from Rothrock Nissan but before he had any work done, he spoke to Kelly who offered to put the catalytic converters and oxygen sensor back on the vehicle if Bullock would sign a release. Kelly confirmed that he did offer to make the installations in exchange for a mutual release, but the parties never reached an agreement. Eventually, Bullock had Rothrock Nissan replace the engine for $9,863.34. Rothrock Nissan also reinstalled the original catalytic converters and exhaust system. The vehicle has run properly since the repairs were made. (*See id.* at 18, 45-48, 50, 57-58, 70-71).

Next Level did not produce any testimony in support of its defamation claim and Bullock argued that Next Level waived any defenses to his Unfair Trade Practices claim because it did not respond to this claim and instead raised a counterclaim.

**B.**

On June 6, 2018, the trial court found in favor of Bullock on the breach of contract claim, awarding damages in the amount of $12,877.20, plus costs and 6% interest from the date of the award. The order dismissed Bullock's Unfair Trade Practices claim and Next Level's counterclaim.

In support of its order, the court issued an opinion finding, *inter alia*, that there was a contract between the parties for Next Level to install the performance enhancing equipment, that Next Level performed the work and Bullock paid in full. The court found the testimony credible that Bullock experienced problems after Next Level completed the work and that Ms. Stiff was credible in her testimony that a hose was unattached when brought to Abeloff Nissan. It found Kelly's testimony that Abeloff Nissan was wrong because he had reattached the hose at the time of doing the performance work to be unconvincing, concluding that Next Level failed to reattach the hose it removed while performing the work on the vehicle, thus breaching the contract.

As to causation, the court found Ms. Stiff testified credibly that the rod knock and engine problems could have been caused by the unattached hose, installation of after-market parts and removal of the catalytic converters. The court noted that although Ms. Stiff was not admitted as an expert, she has a Pennsylvania State Inspection License and was the Assistant Service Manager at Abeloff Nissan. Jeffers, the Service Director at Rothrock Nissan and an ASE

Master Certified Automotive Technician, stated that he could not be certain of what caused the engine damage, but that the unattached hose discovered by Abeloff Nissan was the most likely cause. The court found Jeffers' testimony convincing and compelling and it agreed that the unattached hose was the most likely cause of the damages.

As to damages, the court found Bullock did not get anything he bargained for in the contract. Specifically, the Bully Dog Tuner, Black Cat exhaust system and straight pipes installed by Next Level were all removed and not reinstalled. Hence, Bullock suffered damages in the full amount Next Level charged, $2,309.74. Further, the court found the testimony that reinstalling the catalytic converters and the engine repair work was necessary due to Next Level's failure to reattach the hose as credible and convincing. The court found that Bullock suffered damages in the amount of $9,863.34 for the cost of the work by Rothrock Nissan.

Next Level timely appealed.[2] On appeal, it challenges the sufficiency of the evidence to establish what caused the damage to Bullock's engine.

_____

[2] The record is a bit of a procedural quagmire between the time of the trial court's June 6, 2018 order and this appeal. Next Level initially filed a notice of appeal on July 5, 2018, but the appeal was quashed by this Court on November 7, 2018, due to Next Level having filed a *nunc pro tunc* post-trial motion on August 27, 2018, that remained outstanding. On August 13, 2019, Bullock praeciped to have judgment on the order entered and for a writ of execution on August 21, 2019. On August 22, 2019, a writ of execution was issued. Next Level moved to strike the judgment on August 23, 2019. On January 23, 2020, after a hearing, the court struck the judgment and writ of

**II.**

Next Level does not challenge the trial court's finding that there was a valid contract between it and Bullock to increase the vehicle's performance by installing the Bully Dog Tuner, Black Cat Invidia (exhaust) System and straight pipes and removing the catalytic converters. Nor does it challenge the trial court's conclusion that Next Level breached the contract[3] by "caus[ing] the hose to become unattached while performing the work on [Bullock's] vehicle[.]" (Trial Ct. Op., at 8). Instead, Next Level challenges the "testimony of Janice Stiff and Patrick Jeffers[,]" arguing that "neither [] provided legally sufficient testimony to establish causation," making it not responsible for the resultant damages. (**See** Next Level's Brief, at 10, 14; **see id.** at 15-19).[4]

---

execution and granted Next Level's request to file post-sentence motions *nunc pro tunc*. On March 3, 2020, after Next Level filed an amended post-trial motion *nunc pro tunc*, the trial court denied it after Next Level failed to file a court-ordered brief in support of the motion. Next Level filed a notice of appeal on April 2, 2020. This Court issued an order upon Next Level to *praecipe* for the entry of judgment and to provide this Court with proof of same, at which time the notice of appeal would be treated as filed after the entry of judgment pursuant to Rule 905. **See** Pa.R.A.P. 905(a)(5). Judgment was entered on June 12, 2020.

[3] [T]hree elements are necessary to plead a cause of action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." **Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.**, 137 A.3d 1247, 1258 (Pa. 2016).

[4] "Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the

**A.**

Next Level argues first that, although Ms. Stiff could testify to the fact that the hose was disconnected and there was engine damage, because she was not admitted as an expert witness, her speculation and opinion as to the possible causes of the vehicle's engine damage went beyond the scope of a layperson and should not have been considered.

In its opinion, the trial court acknowledged that Ms. Stiff was not admitted as an expert. It found that in Ms. Stiff's position as the Assistant Service Manager and as a licensed state inspector, she testified that the Abeloff Nissan service technicians discovered that the hose was unattached and that there was an interior rod knock. The court found that Ms. Stiff testified credibly that "the rod knock and engine problems could have been caused by the unattached hose, the installation of the after-market parts, and the removal of the catalytic converters[, which] voided the warranty on the vehicle." (Trial Ct. Op., at 8).

---

law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." ***J.J. DeLuca Co., Inc. v. Toll Naval Assoc.***, 56 A.3d 402, 410 (Pa. Super. 2012) (citations and internal quotation marks omitted).

After our independent review of the record, we are constrained to conclude that the court erred in considering Ms. Stiff's testimony as to causation. Although Ms. Stiff had a state inspector's license and was the Assistant Service Manager, she was introduced as a fact witness, not an expert. The only evidence that should have been considered was her testimony as to facts in her personal knowledge: that the vehicle was brought in for drivability issues, that the technicians found a hose disconnected, after-market parts installed and the catalytic converters removed, and heard a rod knock in the engine. Her opinion that the modifications to the vehicle "could" have caused the engine damage was that of an expert witness, not a lay witness. Moreover, even if the trial court properly considered Ms. Stiff's opinion, it failed to rise to the level of certainty required for an expert because she only stated that a detached hose could cause engine damage, not that it actually did.

**B.**

As to whether Jeffers' causation testimony rose to the required level of certainty,[5] Next Level argues that the causation testimony was insufficient because it was below the reasonable degree of certainty required of experts.

_____

[5] Again, we find Jeffers' qualification as an expert problematic. He was not introduced for that purpose and was qualified by Next Level during cross-examination, although not retained as Next Level's expert. However, for sake of thorough analysis and because a trial judge's qualification of a witness as an expert is well within its discretion, we will consider Jeffers an expert witness.

It points out that Jeffers testified that, "while numerous things could have damaged the engine, 'none of them would be provable[]'" and, when asked if the unattached engine hose was the "most probable cause," he answered, "a lot of signs point to it." (*Id.* at 17-18).

We already provided the trial court's opinion as to Ms. Stiff. As to Jeffers, the trial court explained, in pertinent part:

> Mr. Jeffers stated **he could not be certain** what caused the engine damage, as numerous things could have caused it to breakdown. However, Mr. Jeffers did state that the unattached hose, as discovered by Abeloff Nissan, was the **most likely** cause under the circumstances. Mr. Jeffers was convincing and compelling in his testimony. We agree that the unattached hose was the **most likely** cause of the damage to [Bullock's] vehicle.

(Trial Ct. Op., at 9) (emphases added).

Even when reviewing the record in the light most favorable to Bullock as the prevailing party, this is not the level of certainty that is required to prove causation. Rothrock Nissan could have found if the unattached hose caused the damage if Bullock had elected to have the engine deconstructed, but he chose not to do so because of the cost. As a result, the best Jeffers could say was that there were numerous possible reasons for the engine failure and that "[a] lot of signs point to" it being caused by the detached hose.

The question is whether "a lot of signs point to it" is sufficient to establish that the unattached hose was the cause of the engine damage. "Expert testimony is admissible when, [t]aken in its entirety, it expresses

reasonable certainty that the [proffered cause] was a substantial factor in bringing about the injury. The expert need not express his opinion in precisely the same language we use to enunciate the legal standard." ***Kravinsky v. Glover***, 396 A.2d 1349, 1356 (Pa. Super. 1979) (internal citations omitted). "[T]to make an admissible statement on causation, an expert need not testify with absolute certainty or rule out all possible causes of a condition." ***Id.*** (citation omitted). However, "[a]n expert fails this standard of certainty if he testifies that the alleged cause 'possibly', or 'could have' led to the result, that it 'could very properly account' for the result, or even that it was 'very highly probable' that it caused the result." ***Eaddy v. Hamaty***, 694 A.2d 639, 642 (Pa. Super. 1997) (citation omitted); ***see also Corrado v. Thomas Jefferson Univ. Hosp.***, 790 A.2d 1022, 1031 (Pa. Super. 2001) (finding expert opinion that defendant "more likely than not" deviated from standard of care insufficiently certain.).

In this case, Jeffers' opinion, "a lot of signs point to it," is not sufficiently certain to support the conclusion that but for Next Level's failure to attach the hose, Bullock's vehicle would not have suffered the engine damage that resulted in its replacement. Having not established the causation element for the engine damage, Bullock is not entitled to a damage award for the costs associated with the engine's repair, and we vacate that part of the judgment granting him $9,863.34 for Rothrock Nissan's engine replacement.

## C.

However, Next Level makes no argument that the court improvidently awarded damages for the costs associated with the initial engine performance work and the record supports this award. Next Level and Bullock agreed Next Level would install the Bully Dog Tuner and the Cat Back exhaust system and remove the catalytic converters, and Bullock paid Next Level $2,309.74 for this work. However, Bullock did not receive anything for which he bargained where the Bully Dog Tuner and Cat Back exhaust system were removed and Rothrock Nissan put the catalytic converters back on the vehicle when it installed the engine. Accordingly, we affirm the judgment as to the $2,309.74 Bullock paid to Next Level.

Judgment affirmed in part and vacated in part. Jurisdiction relinquished.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 4/28/2021*