**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2619

_____

JOSEPH EDWARD RIAD,
Appellant

v.

PORSCHE CARS NORTH AMERICA, INC.;
DR. ING. H.C. F. PORSCHE AKTIENGESELLSCHAFT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:18-cv-05175)
District Judge:  Honorable Karen S. Marston

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 5, 2025

_____

Before:  PHIPPS, ROTH, and RENDELL, *Circuit Judges*

(Filed: January 30, 2026)

_____

OPINION[*]

_____


PHIPPS, *Circuit Judge*.

The owner of a foreign manufactured car sued the vehicle's exclusive importer for

personal injuries based on his inhalation of vapors from the car's engine cooling system,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

and summary judgment was entered against him. He now appeals, and for the reasons below, on *de novo* review, we will affirm the judgment of the District Court.

## BACKGROUND

In April 2011, Joseph Riad purchased a used 2004 Porsche Cayenne Turbo, which had composite plastic pipes in its engine cooling system.[1] In or around late November 2016, while he was driving from his home in Pennsylvania to a Porsche dealership in Delaware, there was a coolant leak. According to Riad, he stopped the car, and when he resumed driving, smoke, which smelled like ammonia, entered the cabin of the car through the air conditioning vents and made him feel ill. Riad further states that he called the Porsche dealership twice during the drive, but that after being transferred to a Porsche representative, he was told to continue driving to the dealership.

Riad professes several injuries that he suffered and now endures that he associates with his inhalation of the fumes. When he arrived at the Porsche dealership, he vomited, was coughing, and felt a burning sensation in his lungs. The next day, he went to an emergency room for shortness of breath, and he has subsequently used an inhaler to mitigate respiratory problems that he states he did not have before November 2016. Later, his primary care physician and a pulmonologist determined that Riad has respiratory issues, and, in 2018, he was diagnosed with asthma.

To redress those injuries, on November 30, 2018, Riad initiated this suit in the District Court against the vehicle's exclusive domestic importer, Porsche Cars North

---

[1] The pipes in that model year's engine cooling system were prone to failure – at least according to the allegations in a class action that settled in 2013. *See* Settlement Agreement, *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prod. Liab. Litig.*, No. 2:11-md-2233 (S.D. Ohio July 26, 2013), Dkt. No. 134. Riad did not submit a claim as part of that settlement.

America, Inc., a Georgia corporation registered to do business in Pennsylvania.[2] Riad brought two claims under Pennsylvania law for which he sought over $5 million: one for strict liability design defect and the other for negligent failure to warn. As a suit between citizens of different states with an amount in controversy over $75,000, the case was within the District Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

After discovery closed, Porsche Cars North America moved for summary judgment on the ground that Riad could not establish causation, which is an essential element of his personal-injury claims. *See Mellon v. Barre-Nat'l Drug Co.*, 636 A.2d 187, 191 (Pa. Super. Ct. 1993) ("Proof of causation is a necessary element in a products liability action as well as in a negligence action."); *see also Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (explaining that under the *Celotex* approach, summary judgment is appropriate where "the nonmoving party has not made 'a showing sufficient to establish the existence of an'" essential element on which that party "bear[s] the burden of proof" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))). Pennsylvania recognizes two approaches for establishing causation for personal injuries. The first is by showing an "obvious causal relationship" between the wrongful act and the claimed injury. *Florig v. Sears, Roebuck & Co.*, 130 A.2d 445, 447 (Pa. 1957); *see also Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 750–52 (Pa. 2002). The second approach is through "unequivocal medical testimony," *Florig*, 130 A.2d at 447, meaning that the expert medical opinion must be made to a "reasonable degree of medical certainty," *Mitzelfelt v. Kamrin*, 584 A.2d 888, 892 (Pa. 1990).[3] The District Court determined that Riad failed to

---

[2] Riad also sued the manufacturer of his vehicle, Dr. Ing. h.c. F. Porsche Aktiengesellschaft ('Porsche AG'), Porsche Cars North America's parent company, which successfully moved to dismiss for lack of personal jurisdiction. *See Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 708 (E.D. Pa. 2023).

[3] *See generally McMahon v. Young*, 276 A.2d 534, 535 (Pa. 1971) ("It is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty

3

produce evidence of causation under either approach and entered summary judgment in favor of Porsche Cars North America. *Riad v. Porsche Cars N. Am., Inc.*, 2024 WL 3606315, at *2 n.7, *4–5 (E.D. Pa. July 30, 2024) (concluding that the parties did not address the obvious-causal-relationship approach and that Riad's expert "[could not] opine . . . with a reasonable degree of medical certainty" that coolant fumes caused Riad's injuries).[4] Riad moved for reconsideration, and the District Court denied that motion.

Through a timely notice of appeal, Riad invoked this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a).

## DISCUSSION

On appeal, Riad argues that he produced adequate evidence of causation under both approaches permitted under Pennsylvania law.

He contends that there is an obvious causal relationship between his inhalation of coolant vapors and his injuries. But he did not develop an obvious-causal-relationship argument in the District Court, *see Riad*, 2024 WL 3606315, at *2 n.7, so he forfeited this approach, and it need not be considered now, *see FTC v. AbbVie Inc.*, 976 F.3d 327, 380 (3d Cir. 2020) (explaining that when a party "d[oes] not timely raise [an] argument in the District Court, it is forfeited on appeal").

---

so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment."); *Florig*, 130 A.2d at 447 ("Where there is no obvious causal relationship, unequivocal medical testimony is necessary to establish the causal connection." (emphasis removed) (footnote omitted)); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750–52 (3d Cir. 1994) (explaining that "Pennsylvania['s rule which] requires experts to testify that defendant's actions caused plaintiff's illness with a reasonable degree of medical certainty," applies in federal court).

[4] In opposing summary judgment, Riad also filed a *Daubert* motion to bar testimony from Porsche Cars North America's expert witness regarding medical causation. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Because it granted summary judgment without reliance on Porsche Cars North America's expert, the District Court denied Riad's *Daubert* motion as prudentially moot.

4

He also asserts that the testimony of his medical expert was enough to survive summary judgment. That expert opined that he could "reasonably assert within a degree of medical certainty" that "Riad now suffers from pulmonary pathology which was not present before November 2016," and also that "[t]he inhalation of the toxic substances likely led to the development of pulmonary disease for Mr. Riad." Ashraf Medical Report 5 (JA386). Critically, the expert's reasonable degree of medical certainty was limited to Riad's present condition – not its cause. For the cause of that condition, the expert could say only that it was "*likely*" that the coolant vapors caused the injury. *Id.* (emphasis added). That does not suffice under Pennsylvania law. *See Eaddy v. Hamaty*, 694 A.2d 639, 642 (Pa. Super. Ct. 1997) (explaining that an expert fails to meet the reasonable-degree-of-medical-certainty standard "even [if they testify] that [causation] was 'very highly probable'" (quoting *Kravinsky v. Glover*, 396 A.2d 1349, 1356 (Pa. Super. Ct. 1979))); *Albert v. Alter*, 381 A.2d 459, 469–72 (Pa. Super. Ct. 1977) (holding that when asked "[b]ased on reasonable medical certainty . . . as to the cause of" back pain, expert's answer that it "had its onset subsequent to the accident" was insufficient to establish causation for the injury).

In arguing against that conclusion, Riad contends that his expert's opinion on causation meets the reasonable-degree-of-medical-certainty standard if considered in the context of the whole record. While that approach may work in some circumstances, *see, e.g.*, *Commonwealth v. Spotz*, 756 A.2d 1139, 1160–61 (Pa. 2000), it does not work here, where the remainder of the record is even more tentative with respect to causation. For instance, other statements by Riad's expert treated the coolant vapors as merely "a possible cause" of the injuries. Ashraf Dep. 160:7–161:5 (JA428–29) ("The possibilities obviously include the vapors he inhaled."); *see also id.* at 112:3–114:2 (JA416–17). *Cf. Eaddy*,

694 A.2d at 642; *Albert*, 381 A.2d at 470–71. Other facets of the record likewise prevent the inference of a reasonable degree of medical certainty: Riad's medical expert met Riad only over Zoom; he recognized that Riad had not undergone testing that would allow a more accurate medical opinion on causation; and he based his opinion primarily on Riad's self-disclosures. Thus, this is not a situation where the statements of the expert coupled with additional record evidence reveal that the expert's opinion was to a reasonable degree of medical certainty.[5]

## CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5] Riad also challenges the orders denying his *Daubert* motion and his subsequent motion for reconsideration. Because the basis for the District Court's entry of summary judgment was independent of any opinions provided by Porsche Cars North America's expert witness, it was not an abuse of discretion to deny Riad's *Daubert* motion. And for the reasons above, the District Court did not abuse its discretion in denying Riad's subsequent motion for reconsideration.